**WYTHE II CORPORATION, Appellant,**

v.

**John D. STONE, Appellee.**

**No. 09–09–00397–CV.**

Court of Appeals of Texas, Beaumont.

Submitted on Sept. 9, 2010.

Decided March 10, 2011.

Opinion Denying Rehearing May 5, 2011.

---

**32.** *Schutz,* 63 S.W.3d 442.

**33.** *See id.*

Mark W. Stevens, Galveston, for appellant.

Robert J. Rose, Sr., Dana Timaeus, Timaeus & Rose, L.L.P., Beaumont, for appellee.

Before McKEITHEN, C.J., GAULTNEY and KREGER, JJ.

## OPINION

DAVID GAULTNEY, Justice.

In this appeal by Wythe II Corporation involving a fee dispute with attorney John D. Stone, Wythe presents eleven issues and Stone presents one cross-issue. We affirm in part the judgment in favor of Stone on the contingent-fee contract. We set aside the sanctions penalty awarded to Stone and associated attorney fees. We conclude that the jury award of attorney fees to pursue the breach of the written contract action is not supported by sufficient evidence; we reverse that part of the judgment. We remand the case to the trial court to determine that remaining issue between the parties.

## THE DISPUTE

Stone represented Wythe in a claim against its insurer, XL Lloyds Insurance Company, Inc., on a $1.625 million policy. Hurricane Rita damaged apartments owned by Wythe. At the time the insurance dispute arose, Stone represented Wythe and its president, Waleed Khan, in the defense of litigation brought by a holder of the mortgage on the apartment complex. Represented by separate counsel skilled in bankruptcy law, Wythe filed a voluntary bankruptcy petition. The bankruptcy court approved Stone's representation of Wythe in the claim against XL Lloyds. Wythe satisfied the mortgage holder, and dismissed the bankruptcy proceeding. Stone subsequently negotiated a $1,975,000 settlement agreement between Wythe and XL Lloyds that supplemented a previous payment of $800,000 on the insurance policy. At the end, the carrier had paid $2,775,000 on a $1,625,000 policy.

A fee dispute arose between Stone and Wythe. Stone intervened in the insurance lawsuit to collect his fee, and moved to withdraw as counsel for Wythe. Wythe counterclaimed for fraud and breach of fiduciary duty. XL Lloyds paid the entire settlement proceeds into the registry of the trial court.

## THE PROCEEDINGS BELOW

The trial court denied Wythe's motion for summary judgment, granted partial summary judgment for Stone, and submitted to a jury Stone's derivative claim to recover attorney fees incurred in pursuit of the claim for breach of the written attorney fee contract. The jury found that a reasonable fee for Stone's attorney would be $314,420, with additional fees in the event of an appeal. The trial court signed a judgment against Wythe in the amount of $1,138,694.47.

Stone then filed a motion for sanctions. Stone alleged that Wythe and its new counsel submitted false testimony in response to Stone's motion for summary judgment. The trial court ordered Wythe to pay Stone a penalty of one percent of the amount in the registry of the court plus attorney fees incurred in pursuing the motion for sanctions, and additional fees in the event of an appeal.

## THE CHALLENGED CONTRACT PROVISIONS

Wythe contends that the attorney fee contract is unenforceable as a matter of law. The first provision Wythe challenges provides as follows:

> As an optional alternative to the hourly bill basis, and at the sole option of said attorney, the attorney may elect to receive compensation for attorney's time on the basis of a specified contingency fee calculated as a percentage of the total recovery achieved by virtue of the undertaking which forms the basis of this agreement. . . . The attorney may designate this contingency fee option at any time during the representation.

The second provision challenged by Wythe states:

> In the event the attorney has elected to be compensated on the basis of the contingency fee option, and subsequently withdraws from this representation, then said attorney shall receive an assigned interest equal to the contingency fee percentage that would have applied at the time of such withdrawal the same as if the matter had been settled in its entirety on the date of withdrawal.

Wythe claims that the unilateral option is unconscionable, and that the termination provision fails to distinguish between terminations occurring with or without cause. *See Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 562 (Tex.2006).

## TERMINATION

■ In *Hoover*, the Texas Supreme Court held that a termination provision in a contingent-fee contract violated public policy because it imposed an undue burden on the client's ability to change counsel. *Id.* at 563. Further, by requiring the client to pay the same contingent fee regardless of whether the client eventually prevailed, the termination fee provision shifted the risk to the client while the attorney retained the benefit. *Id.* at 564. The Court severed the unconscionable termination provision and remanded the case to the intermediate appellate court to consider whether to enforce the contingent-fee contract under the holding in *Mandell & Wright v. Thomas*, 441 S.W.2d 841, 847 (Tex.1969). *See Hoover*, 206 S.W.3d at 566. Similarly, the termination provision in this case is severable and does not preclude recovery of a fee. It was not Stone's withdrawal from the representation that triggered Stone's right to payment in this case, but rather his successful settlement of the insurance claim prior to his withdrawal.

## THE OPTION PROVISION

■ Wythe complains that the contract failed to state the method by which the fee would be determined. The representation agreement provided that the fee would be calculated at an hourly billing rate unless the attorney exercised an option to convert the contract to a contingent-fee basis. The agreement provides that Wythe would be responsible for court costs and expenses of litigation.

■ A contingent-fee contract is permissible in Texas in part because the potential for a greater fee compensates the attorney for assuming the risk that the attorney will receive no fee if the case is lost, while the client is largely protected from incurring a net financial loss in the event of an unfavorable outcome. *Hoover*, 206 S.W.3d at 561 (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997)). If the attorney could earn a reasonable fee on an hourly basis until recovery is assured and the work complete, but later exercise a unilateral option to collect a percentage of the client's recovery, the fee would no longer be "contingent" on anything—in effect, the client could be required to pay regardless of recovery. Shifting the risk of non-recovery to the client through the unilateral option provision would undermine one significant justification for the higher compensation sometimes received under a contingent-fee contract. *Id.* Simply stated, when an attorney bears no risk of going unpaid, risk of non-recovery is not a factor in assessing the reasonableness of the fee.

## THE BANKRUPTCY COURT ORDER

■ The record reflects the contingency fee representation was initially authorized by the bankruptcy judge. The contract did not grant the attorney an option to later convert the case to an hourly rate contract. Wythe commenced a Chapter 11 bankruptcy on December 29, 2006. The parties signed the contract on February 1, 2007. A letter from Stone to Wythe's president signed the same day notified Wythe that the representation agreement must be presented to the bankruptcy judge for approval. The contract would become effective only after the approval. Stone stated in the letter that he anticipated that the percentages used in the representation agreement would be acceptable to the bankruptcy judge. In April 2007, acting through separate bankruptcy counsel, Wythe filed an application and a motion to retain Stone for "reasonable compensation for services rendered on an optional contingency basis, described as: ... 40 percent of total recov-

ery if collection or settlement is made after suit is filed and prior to appeal[.]" The bankruptcy court approved the employment of Stone in May 2007. When Stone billed Wythe in July 2007 for its other ongoing litigation regarding the mortgage, Stone described the work he performed in the XL Lloyds litigation with the notation that the 21.75 hours spent working on the XL Lloyds litigation was "N/C Contingency Fee Matter." Wythe and XL Lloyds reached a mediated settlement agreement in September 2008. According to the carrier's attorney, the agreed settlement included consideration of attorney fees in addition to the remaining $800,000 policy proceeds, a penalty, and possibly some interest.

Essentially, the bankruptcy application and order made the contract solely a contingent-fee contract from the beginning of the representation on the bankrupt's claim. We conclude the unenforceability of the unilateral option provision does not render the contingency fee arrangement approved by the bankruptcy court unenforceable under the circumstances presented here.

■ Finally, Wythe also suggests in its first issue that the representation agreement was unconscionable because it required Wythe to bear all expenses of litigation. An attorney is not required to bear all litigation costs, but a contingent-fee contract must state the litigation expenses to be deducted from the client's recovery. *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.04(d), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (West Supp. 2010) (Tex. State Bar R. art. X, § 9). The contract here identified the expenses that were the client's responsibility. We overrule issue one.

## FEE FORFEITURE

■ Wythe contends that Stone breached his fiduciary duty to Wythe and that the trial court erred in failing to order that Stone forfeit all fees. Wythe does not argue on appeal that its claim of breach of fiduciary duty should have been submitted to a jury, but argues instead that this Court should order forfeiture.

■ The equitable remedy of fee forfeiture "is to protect relationships of trust by discouraging agents' disloyalty." *Burrow v. Arce,* 997 S.W.2d 229, 238 (Tex. 1999). The remedy is restricted to " 'clear and serious' " violations of duty. *Id.* at 241; Restatement (Third) of the Law Governing Lawyers § 49 (2000). A " 'clear' " violation occurs " 'if a reasonable lawyer, knowing the relevant facts and law reasonably accessible to the lawyer, would have known that the conduct was wrongful.' " *Burrow,* 997 S.W.2d at 241 (quoting Restatement (Third) of the Law Governing Lawyers § 49, cmt. d (Proposed Final Draft No. 1, 1996)). The "serious" requirement takes into consideration " 'the gravity and timing of the violation, its willfulness, its effect on the value of the lawyer's work for the client, any other threatened or actual harm to the client, and the adequacy of other remedies.' " *Id.* at 243; *see also* Restatement (Third) of the Law Governing Lawyers § 49.

In his summary judgment affidavit, Khan stated that Stone only showed him the signature page on the fee agreement at the time of execution. Stone provided Khan with a copy of the representation agreement and a cover letter that disclosed the proposed new contingent-fee agreement. Stone delivered the proposed contract to Wythe's bankruptcy attorney, who prepared and presented Wythe's bankruptcy application to retain Stone. The application disclosed the rate of the contingency fee.

Wythe complains that Stone acquired information about the claim during his rep-

resentation of Wythe in the litigation with the mortgage holder, then used that information to his own advantage by suggesting representation on a contingent-fee basis. If a contingent-fee contract provided a means by which Wythe could secure representation while in bankruptcy, the knowledge Stone acquired in the other litigation regarding the potential value of the lawsuit would not necessarily have been to the client's detriment. Stone did not operate in secret but informed Wythe's independent bankruptcy counsel, Wythe, and the bankruptcy court of his intended arrangement with Wythe.

Wythe argues that Stone failed to withdraw as counsel for Wythe before he asserted his attorney fee claim in the trial court against Wythe, and that Stone refused to turn over his litigation files when requested. Stone filed his petition in intervention on November 26, 2008. At that time, the settlement agreement had been executed, and XL Lloyds had tendered the settlement check. The transition was not without difficulty. By December 8, 2008, Stone had filed a motion to withdraw as counsel and new counsel had entered a formal appearance on behalf of Wythe. During a hearing conducted on December 12, 2008, counsel for Wythe asked Stone if he had any objection to producing his files from the XL Lloyds litigation. Stone referred Wythe's counsel to Stone's counsel. Counsel for Stone then explained that the previous week Stone's counsel had declined to give the files to Wythe's new counsel because that counsel did not yet represent Wythe.

Wythe also argues that Stone attempted to withdraw his fee before Wythe could obtain a stay order from this Court. *See In re Khan*, No. 09–08–00539–CV, 2008 WL 5622698, at *1 (Tex.App.-Beaumont Feb. 12, 2009, orig. proceeding [mand. denied] ) (noting entry of order staying proceedings in the trial court). At that point, Wythe was represented by other counsel, and Stone had counsel.

▆▆▆▆▆ The decision whether to forfeit the fee is initially that of the trial court. *Burrow*, 997 S.W.2d at 246; *see also Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 428–29 (Tex.2008). The trial court's primary consideration is "whether forfeiture is necessary to satisfy the public's interest in protecting the attorney-client relationship." *Burrow*, 997 S.W.2d at 246. The trial court could reasonably conclude that the actions of the attorney did not affect the value of the lawyer's work for the client or harm the client. Under the circumstances presented in this case, the trial court was not required to order the fee forfeited. *See Burrow*, 997 S.W.2d at 243. We overrule issue two.

### Fraud

▆▆▆ In issue three, Wythe argues its claim of fraudulent inducement. Again, Wythe does not argue that a disputed fact issue must be determined by a jury. Instead, Wythe asks this Court to hold that Stone committed fraud as a matter of law.

▆▆▆ A contract procured by fraud may be avoided. *See Formosa Plastics Corp. U.S.A. v. Presidio Eng'rs & Contrs.*, 960 S.W.2d 41, 46 (Tex.1998); *Amouri v. Southwest Toyota, Inc.*, 20 S.W.3d 165, 169 (Tex.App.-Texarkana 2000, pet. denied). Wythe argues Stone procured the contract through fraud by showing Khan only the signature page and telling Khan that the contract was " 'just for the bankruptcy[.]' "

Wythe's separate bankruptcy counsel prepared an application and submitted the documents to the bankruptcy court. Stone gave Khan a copy of the contract, along with a letter that explained that the prior contract for legal services was with Khan individually, not Wythe. As a result of the

mortgage litigation, Stone and Wythe had an established attorney-client relationship when Khan signed the new contract on behalf of Wythe. The letter explained that the representation agreement with Wythe would have to be presented to the bankruptcy court and would be subject to the bankruptcy court's approval. Although Khan concedes he received a copy of the letter, he states that Stone did not draw his attention to it. Khan asserts he did not read the documents. Regardless, Stone's conduct does not establish the elements of fraud as a matter of law. The only argument Wythe makes in issue three is without merit. The issue is overruled.

### CONDITION PRECEDENT

Wythe contends in issue four that Stone failed to demonstrate the fulfillment of a condition precedent. Wythe claims that Stone failed to establish the bankruptcy court's final approval. The representation agreement states that "[o]ur representation of you begins when ... notice of any required approvals of this agreement has been received by the attorney." The summary judgment record includes an order of the bankruptcy court. The order states that "the employment of [Stone] as special counsel, nunc pro tunc, for the purposes set out in the Motion [to Retain Stone as Special Counsel] is hereby APPROVED, which such compensation as may be awarded by the Court upon proper application...." *See* 11 U.S.C.A. § 327(e) (West 2004). Essentially, the order authorized the employment of Stone during the bankruptcy proceeding under a contingent-fee arrangement, and required a further application to the bankruptcy court for final approval of the amount to be paid.

While the bankruptcy court maintained jurisdiction over the case, Stone's receipt of payment required the prior approval of the bankruptcy court. *See*

U.S.C.A. § 330(a)(1) (West Supp. 2010). The bankruptcy court approved the employment of Stone by Wythe. *See* U.S.C.A. § 327(e). After the bankruptcy court approved Stone's employment, the bankruptcy proceeding was dismissed. *See* U.S.C.A. § 349(b)(3) (West 2004) (dismissal revests the property of the estate in the entity in which such property was vested immediately before commencement of the case). The dismissal occurred before the insurance claim was settled and before the amount of the fee could be calculated. Under these circumstances, obtaining the bankruptcy court's final approval of the amount of the fee to be paid after completed performance was not possible, because the bankruptcy proceeding was no longer pending. That impossibility does not defeat payment of a fee in this case. When a condition would impose an impossible result, it generally is not treated as a condition precedent. *See generally Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex.1976) ("an absurd or impossible result"). We overrule issue four.

### ATTORNEY FEES FOR BREACH OF CONTRACT

In issue five, Wythe contends the trial court erred in overruling Wythe's motion for directed verdict as to Stone's claim for attorney fees for breach of the contract. *See* Tex. Civ. Prac. & Rem.Code Ann. § 38.001(8) (West 2008) (allowing recovery of attorney fees if the claim is for a written contract). Wythe contends that the funds were deposited into the registry of the court through an interpleader, and that attorney fees cannot be recovered by a claimant in an interpleader proceeding.

Wythe fails to distinguish interpleader from the causes of action between the parties. Stone alleged that Wythe, by refusing to perform its obligations under the contract, breached a written contract with Stone. Stone's claim for attorney fees in-

curred in pursuing the breach of contract claim is based on Section 38.001 of the Texas Civil Practice and Remedies Code, not Rule 43 ("Interpleader"). *See* Tex. Civ. Prac. & Rem.Code Ann. § 38.001(8); Tex.R. Civ. P. 43. We overrule issue five-B.

■ The jury found a reasonable fee for Stone's attorneys would be $314,420 through the trial, and made additional findings applicable in the event of appeal. Wythe argues that the evidence of a contingent-fee agreement, taken alone, is not sufficient evidence that the attorney fee was reasonable and necessary.

The contract for legal services between Stone and Stone's counsel provided for a contingent fee. Stone was to be responsible for payment of fees on an hourly basis for the defense of any affirmative claim against Stone. Stone testified that he chose to pursue his claim through a contingent-fee agreement because the amount of money involved in the claim increased the likelihood that the case would be fully litigated, and he could not afford to pay a retainer of hundreds of thousands of dollars.

■ By itself, however, the contingent-fee agreement does not provide a sufficient evidentiary basis for the jury's award. *See Arthur Andersen,* 945 S.W.2d at 818. A contingent-fee contract allows a plaintiff who cannot afford to pay an attorney up-front to pay the attorney out of any recovery, and compensates the attorney for the risk that the attorney will receive no fee whatsoever if the case is lost. *Id.* While a contingent fee may be "a reasonable fee from the standpoint of the parties to the contract[,]" that alone does not make the fee "reasonable for purposes of shifting that fee to the defendant." *Id.* To recover attorney fees from the defendant, a plaintiff must request a specific sum for the attorney fees, not expressed as

a percentage of the damages. *Id.* at 819. The non-exclusive factors the jury may consider when determining the reasonableness of a fee include:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.* at 818.

Stone's lead counsel and his counsel's partner both worked on this case, and they testified extensively to the work performed. No depositions were taken. Lead counsel nevertheless expended a total of "over 550 hours" on the case. He did not try to determine a reasonable fee based upon an hourly rate. He testified the XL Lloyds settlement has been "sitting in the bank, waiting for the Court to distribute it or disburse it."

Counsel's partner testified that accepting a contingent-fee case requires a large commitment on the law firm's part, because the firm would not get paid until the end of the case and might not get paid at

all. According to the partner, the percentage fee in the contract is a usual and customary contingency fee for Jefferson County. The partner did not keep a detailed log of his hours, but he had expended approximately 160 hours on the case before the trial started.

Although Stone presented evidence regarding the number of hours expended by counsel on the case, Stone's contention that the fee is reasonable is based ultimately on the testimony that 40 percent is the customary contingent-fee rate for the area, and that $314,420 is approximately forty percent of the $790,000 attorney fee awarded to Stone for his work in the XL Lloyds litigation, after minor adjustments.

Stone had possession of the XL Lloyds settlement check when Stone hired his attorney. Khan's refusal to endorse the joint check was immediately circumvented by obtaining a court order to deposit the disputed funds into the registry of the court, including additional funds that belonged to Wythe. Because sufficient funds were in the registry of the court, if Stone obtained a final judgment, collection was a near certainty.

The evidence offered by Stone to support the other *Arthur Andersen* factors does not provide sufficient justification for shifting the entire amount of the contingent fee to Wythe. Much of the time expended concerned a mandamus proceeding in which Stone was unsuccessful. *See In re Khan*, 2008 WL 5622698, at *1. The presiding judge denied Stone's request for attorney fees for the recusal proceedings. The fee awarded by the jury is excessive under the circumstances. We sustain issue five-A in part and overrule it in part. We reverse the judgment in part and remand the case for a determination of a reasonable fee based on an hourly rate, not determined as a percentage of damages and not based on a mandamus proceeding

in which Stone was unsuccessful. *See Smith v. Patrick W.Y. Tam Trust,* 296 S.W.3d 545, 548–49 (Tex.2009); *Arthur Andersen,* 945 S.W.2d at 819.

SANCTIONS

In issue six, Wythe contends the trial court erred in assessing a sanctions penalty to be paid to Stone. The trial court explained its ruling in a thirty-two page order.

In responding to Wythe's claim that Stone breached his fiduciary duty to Wythe, Stone explained that the case was made difficult by the untrustworthiness of Khan. Wythe responded by asserting that Khan's affidavits were truthful. Wythe obtained permission to correct technical defects in Khan's affidavit, but then submitted an amended affidavit which, according to the trial court, made material changes that included "additional falsities[.]" The trial court found that Khan made false statements during the sanctions hearing, including statements concerning his past criminal record. The trial court imposed sanctions pursuant to Chapter 10 of the Civil Practice and Remedies Code, Texas Rules of Civil Procedure 13, 215, and 166a(h), and the court's inherent powers. *See generally* Tex. Civ. Prac. & Rem.Code Ann. § 10.004(c)(3) (West 2002) (allowing court to order a party to pay to the other party the amount of the reasonable expenses incurred by the other party due to the filing of a frivolous pleading or motion); Tex.R. Civ. P. 13 (allowing imposition of Rule 215 sanction for filing a document in bad faith); Tex.R. Civ. P. 215.3 (allowing court to impose sanction for discovery abuse); Tex.R. Civ. P. 166a(h) (allowing court to order party who presents a summary judgment affidavit in bad faith to pay the other party's reasonable expenses incurred by the filing).

■ Wythe contends that the trial court erred in assessing a penalty to be paid to a private party. The trial court assessed a penalty of $19,750 (one percent of the XL Lloyds settlement) to be paid to Stone. The Civil Practice and Remedies Code allows a trial court to sanction a party for filing a frivolous pleading, but the permissible sanctions are:

(1) a directive to the violator to perform, or refrain from performing, an act;

(2) an order to pay a penalty into court; and

(3) an order to pay to the other party the amount of the reasonable expenses incurred by the other party because of the filing of the pleading or motion, including reasonable attorney's fees.

Tex. Civ. Prac. & Rem.Code Ann. § 10.004(c). Likewise, Texas Rule of Civil Procedure 13 permits the court to impose an appropriate sanction for signing a frivolous pleading, motion, or other paper, but the permissible sanctions are those available under Texas Rule of Civil Procedure 215. *See* Tex.R. Civ. P. 13. The sanctions available under Rule 215 include "an order charging all or any portion of the expenses of discovery or taxable court costs or both against the disobedient party or the attorney advising him[ ]" and an order to pay "the reasonable expenses, including attorney fees, caused by the failure[ ]" to obey the order of the court. Tex.R. Civ. P. 215.2(b)(2), (8). Rule 215 does not provide for the payment of a one percent penalty to the opposing party.

■ A similar provision in Texas Rule of Civil Procedure 166a(h) provides that the trial court may require a party who presents a summary judgment affidavit in bad faith "to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney's fees[.]" Tex.R. Civ. P. 166a(h). The Rule does not authorize the trial court to assess a fine to be paid to the opposing party. *See id.; see also Sterling v. Alexander,* 99 S.W.3d 793, 797 (Tex.App.-Houston [14th Dist.] 2003, pet. denied); *see also generally Cadle Co. v. Lobingier,* 50 S.W.3d 662, 669 (Tex.App.-Fort Worth 2001, pet. denied) (contempt fines). We conclude the trial court erred in ordering that a penalty be paid to Stone.

■ Wythe argues the trial court erred in ordering Wythe to pay Stone $49,575 in attorney fees to pursue the sanctions penalty. He claims Stone did not incur actual expenses in pursuing the motion.

The order to pay attorney fees for the time expended in correcting the record and addressing the opposing party's misconduct concerns the trial court's exercise of its inherent power. *See generally Scott & White Mem'l Hosp. v. Schexnider,* 940 S.W.2d 594, 596 (Tex.1996) (A trial court has authority to decide a motion for sanctions while it retains plenary power over the case.). Under the circumstances, however, the amount of the attorney fees awarded for pursuit of the motion is excessive. The sanctions order improperly granted an additional percentage of the funds in the registry in the form of a penalty payable to Stone. We have concluded that the penalty recovery is impermissible. We further conclude the attorney fee awarded is excessive, and the trial court should reconsider the reasonableness of the fee awarded to pursue the motion.

■ Wythe argues that Stone waived his right to seek sanctions, because he knew of the alleged perjured testimony and did not seek a remedy before the summary judgment hearing. The case relied upon by Wythe involved a pre-trial discovery dispute. *See Meyer v. Cathey,* 167 S.W.3d 327, 333 (Tex.2005). The sanc-

tions order here addresses misconduct that occurred in connection with a summary judgment hearing. *See Remington Arms Co. v. Caldwell*, 850 S.W.2d 167, 170 (Tex. 1993) (Failure to obtain a pretrial ruling waives a claim for sanctions only on discovery disputes that exist before commencement of trial.). The trial court heard the motion for summary judgment on June 29, 2009, signed a partial summary judgment on July 10, 2009, and retained plenary jurisdiction over the case when Stone filed his motion for sanctions.

Wythe contends that the sanctions order impermissibly allows a litigant to file an action for civil damages based solely on allegations of false testimony. *See Kale v. Palmer*, 791 S.W.2d 628, 632–33 (Tex.App.-Beaumont 1990, writ denied). The claims asserted in *Kale v. Palmer* were in the nature of malicious prosecution, and the jury's findings in the first action precluded the losing party from asserting that claim in subsequent litigation. *Id.* at 632. Stone was the successful party in the fee dispute. The partial summary judgment did not preclude Stone from bringing false testimony to the attention of the trial court. While he is not entitled to a double recovery of the same fees, we are confident that on remand, the trial court will limit any recovery to reasonable fees incurred and not otherwise awarded.

Because the trial court erred in assessing a penalty to be paid to Stone, we delete that award from the sanctions order. The award to Stone of attorney fees in the amount of $49,575 to present the motion is excessive. We reverse that part of the sanctions order, and remand the issue for reconsideration. Issue six is sustained in part and overruled in part.

## MOTION TO RECUSE

In issues seven and eight Wythe challenges the denial of Wythe's motion to recuse the trial judge. Wythe relied upon the judge's involvement in Stone's attempt to obtain the check as evidence of either personal bias or prejudice of the trial judge or personal knowledge of disputed evidentiary facts concerning the proceeding. Stone's cross-issue contends Wythe filed a tertiary motion to recuse for which Stone is entitled to recover attorney fees. After an evidentiary hearing, the administrative presiding judge denied Wythe's motion to recuse. Stone subsequently filed an application for attorney fees, which the presiding judge denied.

Wythe contends three acts demonstrate antagonism. First, Wythe argues the judge initially set a final hearing on the fee dispute on less than forty-five days' notice. *See* Tex.R. Civ. P. 245. Consequently, this Court conditionally granted Wythe's mandamus petition, and the trial court heard the matter on Stone's motion for summary judgment. *See In re Khan*, 2008 WL 5622698, at *1. Second, Wythe contends the trial judge commenced an adversary hearing while Stone was still counsel of record for Wythe. New counsel for Wythe appeared at the hearing, and the trial judge granted Stone's motion to withdraw without objection from Wythe and before the trial court received testimony. Third, Wythe contends that the trial judge walked out into the hallway while a deputy clerk and Stone's wife returned from the auditor's office with a check for the funds released to Stone. The deputy clerk testified that the trial judge told the clerk that she could give the check to Stone. When the clerk informed the judge that she had been instructed to return to the District Clerk's office with the check, the judge told her that if they needed him they could contact him.

The facts relied upon by Wythe do not establish judicial bias. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex.2001).

The record shows that the trial judge heard a contested intervention as a motion, and that once the ruling was overturned the trial judge heard the matter in a manner consistent with this Court's ruling. *See In re Khan,* 2008 WL 5622698, at *1. The trial judge's handling of Stone's motion to withdraw did not interfere with Wythe's ability to be heard on either Stone's motion to withdraw or his motion to release the disputed funds.

Having heard the evidence concerning the trial judge's alleged bias, the presiding judge could reasonably conclude on this record that the trial judge was within his discretion in enforcing his own orders. *See Dow Chem. Co.,* 46 S.W.3d at 240. The presiding judge's denial of Wythe's recusal motion was not an abuse of discretion. Tex.R. Civ. P. 18a(f). We overrule issue seven.

 Wythe contends that the Due Process Clause of the Fourteenth Amendment requires recusal for the mere appearance of bias. *See* U.S. Const. amend. XIV. Because a judge cannot act as a judge in his own case, due process requires that a judge be recused when his rulings in a case will have "the clear and immediate effect of enhancing both the legal status and the settlement value of his own case." *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 824, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986). Wythe apparently claims that the appearance of impropriety arose from the trial judge's former firm's alleged involvement in the case that resulted in fee forfeiture in *Burrow v. Arce,* and in litigation by the State of Texas against tobacco companies. *See Burrow,* 997 S.W.2d at 232; *see also Texas v. Real Parties in Interest,* 259 F.3d 387, 388 (5th Cir.2001). This alleged potential for future litigation involving a different matter does not rise to the level of personal interest in pending litigation like that present in *Lavoie. See Lavoie,*

475 U.S. at 816–17, 822, 106 S.Ct. 1580. Wythe has not shown that the trial judge was disqualified. We overrule issue eight.

 In his sole cross-issue, Stone contends the presiding judge erred in refusing his application for attorney fees for responding to the motion to recuse. Stone contends the motion to recuse filed by Wythe in the trial court was an unsuccessful tertiary motion for which attorney fees are mandatory. *See* Tex. Civ. Prac. & Rem.Code Ann. § 30.016(c) (West 2008). Stone argues that the unsuccessful mandamus petitions filed in this Court and in the Supreme Court qualified as the first and second motions to recuse, so that the single motion to recuse that Wythe filed in the trial court was a tertiary motion for purposes of Section 30.016 of the Texas Civil Practice and Remedies Code. *Id.*

By Stone's construction of the statute, if a party files a motion to recuse the trial judge and then unsuccessfully challenges that ruling in the Court of Appeals and in the Supreme Court, the opposing party will always be entitled to attorney fees. *See Id.* 30.016(a). An appeal or mandamus petition is not the functional equivalent of a motion to recuse in the trial court. We overrule Stone's cross-issue.

### OBJECTIONS TO EVIDENCE

 In issue nine, Wythe contends the trial court erred in sustaining Stone's objections to Wythe's summary judgment evidence. For six of the eleven objections, Wythe either quotes the paragraphs in Khan's amended affidavit to which Stone objected, identifies the exhibit at issue, mentions Stone's objection, and either explains why the statement in the affidavit should not have been objectionable for the reason raised by Stone or notes that Stone included the same exhibit in his own summary judgment evidence.

The statement regarding the absence of the bankruptcy lawyer at the signing of Stone's representation agreement is, as Wythe notes, contained elsewhere in the summary judgment record and is not a disputed matter. Stone objected to the other statements on grounds that the statements were conclusory, hearsay, and speculation. Wythe provides no authority to establish that Stone's objections had no legal basis and should have been overruled. *See* Tex.R.App. P. 44.1.

Similarly, Wythe complains that the trial court sustained Stone's objection to Khan's original affidavit. Stone's objection claimed Khan's affidavit "is not based upon personal knowledge and thus is hearsay and inadmissible." On appeal, Wythe argues that it cured the defect in Khan's original affidavit by submitting an amended affidavit that included "the ritual words concerning personal knowledge and 'true and correct.'" Wythe supplies no argument or supporting authority that Stone's objection was invalid, or any supporting authority for arguing that Wythe was harmed by the trial court's sustaining of an objection to an affidavit that was amended in a subsequent filing.

A letter from Stone with an enclosed bill was the subject of an objection that the document was immaterial and irrelevant. On appeal, Wythe notes that Stone submitted the same document in his own summary judgment evidence. Nothing prevents Wythe from relying on a document attached to Stone's motion for summary judgment. *See Wilson v. Burford,* 904 S.W.2d 628, 629 (Tex.1995) (Both parties may rely on summary judgment evidence submitted by one of the parties.); *Perry v. Houston Indep. Sch. Dist.,* 902 S.W.2d 544, 547–48 (Tex.App.-Houston [1st Dist.] 1995, writ dism'd w.o.j.) ("A nonmovant may use a movant's own exhibit against the movant

to establish the existence of a fact question.").

Wythe also complains the trial court sustained Stone's objection that Khan "is incompetent to give a legal opinion and the proper predicate has not been provided for him to give any kind of a legal opinion." Wythe argues that this objection "does not even identify which statement, if any, is challenged, and never should have been dignified with a ruling, much less one which 'sustained' it." Although the order ruling on Stone's objections states that "[t]he evidence for each objection that is sustained is hereby stricken[,]" it is not apparent what evidence was stricken as a result of this particular ruling. Wythe does not contend that the trial court struck his entire affidavit, and does not direct this Court's attention to any statements in the affidavit that were affected by this particular ruling.

It does not appear that the trial court's rulings on the objections require a reversal of the judgment. *See* Tex.R.App. P. 44.1. We overrule issue nine.

In issue ten, Wythe contends the trial court erred in striking the "addendums" to paragraphs seven through nine of Khan's amended reply affidavit. After the summary judgment hearing, Wythe filed a motion for leave to file an amended reply affidavit. The motion explained in part as follows:

[A]t least one statement[ ] of Mr. Khan['s] obviously was incorrect, albeit on points of fact irrelevant and not material to the issues before the court, i.e., the statement to the effect that Khan submitted "estimates", and either stating or implying that he did not provide Mr. Stone with "invoices.["] Mr. Khan obviously did supply Mr. Stone with invoices or bills—but the invoices produced on June 29 by Mr. Stone obviously had nothing to do with the apartment

complex which was the apparent focus of the Lloyds XL litigation. The larger items submitted (e.g., a bill for installation of Gilbarco equipment for c. $75k; a bill for installation of coolers; and one for metalwork) obviously were for work at the "Touchdown", a convenience store/gas station located on Twin Cities in Nederland.

Thus, the Court's ruling apparently is an invitation for Khan—in order to preserve some statements to the extent that they might be material—to knowingly file a false affidavit. This Wythe and its counsel cannot do.

Accordingly, an amended Affidavit of Waleed Khan, attached hereto. Leave is requested to file this Affidavit late and with the corrections existing in the interest of justice.

Stone objected to the amended affidavit because the trial court "granted *Wythe* leave to correct an error of form in Waleed Khan's previously filed statement so that Waleed Khan could execute and file a document that comports with Texas affidavit procedure[,]" and argued that pursuant to the trial court's ruling "Khan was to sign a properly sworn and notarized affidavit in the exact form as his previously filed statement with no changes in the content of the statement." Stone objected on the ground that the "newly filed affidavit exceeds the Court's authorization." The trial court ordered that "the addendum language at paragraphs 7, 8, and 9 of the Reply Affidavit of Waleed Khan (amended July, 2009) are stricken and will be disregarded for purposes of the determination of summary judgment motions filed by John D. Stone and by Wythe II Corporation."

■ In arguing that the trial court abused its discretion, Wythe complains that by excluding the added portions of the affidavit, the trial court deprived Wythe of its right to controvert Stone's summary judgment evidence, and the court also improperly imposed sanctions after refusing to allow Wythe to correct Khan's affidavit. Assuming the changes to the affidavit exceeded the trial court's directive, Wythe nonetheless unequivocally requested permission to correct the record. The issue is whether the trial court abused its discretion by denying that leave.

■ The trial court has the inherent power to sanction "to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process." *IFC Credit Corp. v. Specialty Optical Sys., Inc.*, 252 S.W.3d 761, 772 (Tex.App.-Dallas 2008, pet. denied). "The inherent powers of a court are those which it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity." *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398–99 (Tex.1979). It is not clear how the trial court's integrity is preserved, in this instance, by its refusal of leave to correct a misstatement in the record. Wythe admitted that statements in Khan's affidavit had to be corrected to comply with Khan's statement that the matters contained in the affidavit were true and correct, and it was not reasonable to refuse to permit Wythe to do so, particularly under circumstances where Stone was asking that Wythe be sanctioned for making the statements in the affidavit. Wythe would not have necessarily escaped any sanction for making the statements in the earlier affidavit, but a trial court's denial of a party's request to correct the record may prevent the party from mitigating wrongful conduct.

The statements Wythe sought to correct related to Stone's lack of trust in Khan. Distrust of a client would not excuse an unconscionable legal services agreement. *See generally* Tex. Disciplinary Rules Prof'l Conduct R. 1.04, *reprinted in* Tex.

Gov't Code Ann., tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9) (describing factors that may be considered in determining reasonableness of a fee). The evidence excluded by the trial court did not concern an issue determinative of the case. *See Allen v. United of Omaha Life Ins. Co.,* 236 S.W.3d 315, 324–25 (Tex.App.-Fort Worth 2007, pet. denied) (Erroneous refusal to allow correction of false affidavit not shown to have been offered in bad faith was harmless where the case did not turn on the excluded affidavit.). Although Stone, in seeking sanctions against Wythe, used the statements the court had refused permission to correct, we have vacated the trial court's penalty order on other grounds, and we have reversed the trial court's award of attorney fees. We are confident the court will proceed on remand in conformance with this opinion. Issue ten is overruled in part and sustained in part.

In issue eleven Wythe contends the trial court erred in overruling four of Wythe's objections to Stone's affidavit. Stone's affidavit included Stone's construction of the "option" language in the contingent-fee contract. Wythe objected to the paragraph on the ground that it violated the parol evidence rule. *See David J. Sacks, P.C. v. Haden,* 266 S.W.3d 447, 450 (Tex. 2008). The part of Stone's affidavit concerning the import of the terms contained within the contract does not contain inadmissible evidence of a parol agreement. Wythe objected to the same paragraph on the ground that Stone is not competent to testify as to the meaning or effect of a written contract. *See Akin v. Santa Clara Land Co., Ltd.,* 34 S.W.3d 334, 339 (Tex. App.-San Antonio 2000, pet. denied) ("Expert testimony regarding the legal interpretation of an unambiguous contract encroaches upon the trial court's province to determine the correct legal interpretation."). Wythe does not suggest how the

trial court's failure to strike the paragraph containing Stone's understanding of the legal representation agreement resulted in an improper judgment, however. *See* Tex. R.App. P. 44.1.

Wythe also objected to paragraph 28 of Stone's affidavit, in which Stone stated that Khan is an experienced, clever, and sophisticated businessman, on the ground that Stone was making an unsupported lay opinion. *See* Tex.R. Evid. 701. The remainder of the paragraph set forth the basis of Stone's opinion, namely, that Khan is the chief executive officer of several corporations, and Stone was aware that Khan personally participated in "a variety of contentious business and legal matters[.]"

Finally, Wythe objected to a statement in paragraph 46 of Stone's affidavit, that Stone was "operating exclusively under the contingency fee provisions in the *Representation Agreement* [,]" on the ground that the statement violates the parol evidence rule. Wythe argues this statement purports "to give [Stone's] own interpretation of how the contract 'worked' " in the absence of objective evidence that Stone elected to proceed on a contingent-fee basis. The particular statement precedes Stone's description of the documentary evidence that corroborates Stone's claim, and, if untrue, could be readily controverted by reference to the documents described in paragraph 46. *See Wise v. Dallas Sw. Media Corp.,* 596 S.W.2d 533, 536 (Tex. Civ.App.-Beaumont 1979, writ ref'd n.r.e.). Regardless, this case is controlled by the bankruptcy court's order approving the representation from the outset on a contingent-fee basis. We overrule issue eleven.

CONCLUSION

The trial court did not err in granting summary judgment in favor of Stone on

the contingent-fee contract for legal services. We affirm that part of the judgment. The trial court erred in assessing a penalty to be paid to Stone, and in the amount of attorney fees awarded for pursuit of that order. We vacate the part of the sanctions order that assessed a penalty of $19,750, and the part of the sanctions order that assessed attorney fees. The jury's verdict is not supported by sufficient evidence. Accordingly, we reverse the part of the judgment that awarded Stone attorney fees for the development of Stone's breach of contract claims. We remand the case to the trial court for a new hearing solely on the remaining issue of the reasonable amount of attorney fees necessary to enforce the contract.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

## OPINION ON MOTION FOR REHEARING

In a motion for rehearing, Stone contends that this Court addressed factual sufficiency in issue five-A as unpreserved and unassigned error. This contention is not correct. The Court sustained the no evidence issue presented.

Wythe challenged the legal sufficiency of the evidence supporting the jury's award of attorney fees. In particular, Wythe urged that Stone "never introduced contemporaneous billing records or any testimony regarding reasonable hourly fee rates." As explained in the opinion, this Court remanded the case for a determination of a reasonable fee based on an hourly rate. The Court's opinion addressed the issue that was preserved, raised, and briefed: that is, the legal sufficiency of the evidence supporting the award of attorney fees. This Court held that the evidence offered by Stone did not provide sufficient justification for shifting the amount of the contingent fee to Wythe. The evidence presented was legally insufficient to support a fee in the amount awarded by the jury. *See City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex.2005).

It is correct that "[g]enerally we render judgment when a no evidence issue is sustained following a trial on the merits." *Guevara v. Ferrer,* 247 S.W.3d 662, 670 (Tex.2007). That possibility has been considered by the Court. But there are limited exceptions. It is not always appropriate for an appellate court to render judgment when a no evidence issue is sustained following a trial. *See id.* When there is no legally sufficient evidence to support the amount awarded by the jury, and there is no legitimate question that some amount of attorney fees are owed under a correct measure, remand to the trial court may be appropriate to determine a reasonable fee. *See, generally, Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.,* 960 S.W.2d 41, 51 (Tex.1998) (remanding where there is "no legally sufficient evidence to support the entire amount of damages, but there is some evidence of the correct measure of damages"); *see also Guevara,* 247 S.W.3d at 670 ("However, when there is evidence to support some damages it is not appropriate to render judgment."). Also, the possibility of a suggestion of remittitur has been considered by this Court, but the record in this case does not permit that action. *See id.* Although Stone had the burden of offering evidence but failed to present legally sufficient evidence, the Court concluded that a remand to the trial court for the determination of a reasonable fee would be the appropriate judgment under the circumstances. We see no reason to grant the motion for rehearing to reconsider the decision.

Although Stone raises other issues in his motion for rehearing, and Wythe also filed a motion for rehearing and a reply to

Stone's motion, none of the other issues raised by the parties require clarification of the Court's opinion or a rehearing by the Court. The motions for rehearing are overruled.