ACCEPTED
13-15-00348-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
10/15/2015 5:28:01 PM
Dorian E. Ramirez
CLERK

No. 13-15-00348-CV

**In the Court of Appeals for the Thirteenth Court of Appeals District
Corpus Christi, Texas**

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
10/15/2015 5:28:01 PM
DORIAN E. RAMIREZ
Clerk

**TOTAL E&P USA, INC.**
*Appellant*,

**v.**

**MO-VAC SERVICES COMPANY, INC.**
*Appellee*.

ON APPEAL FROM THE 275TH JUDICIAL DISTRICT COURT,
HIDALGO COUNTY, TEXAS

Trial Court Case Number C-023-05-E

**BRIEF OF APPELLANT TOTAL E&P USA, INC.**

ELLIS, KOENEKE & RAMIREZ, L.L.P.
Edmundo O. Ramirez
State Bar No. 16501420
Email: eor@ekrattorneys.com
Minerva I. Zamora
State Bar No. 24037765
Email: miz@ekrattorneys.com
1101 Chicago Ave.
McAllen, Texas 78501
Telephone: (956) 682-2440
Facsimile: (956) 682-0820
*Counsel for Appellant Total E&P USA, Inc.*
Oral Argument Requested

## IDENTITY OF PARTIES AND COUNSEL

**Appellant/Defendant:**                   Total E&P USA, Inc.

**Counsel for Appellant/Defendant:**    ELLIS, KOENEKE & RAMIREZ, L.L.P.
Edmundo O. Ramirez
Minerva I. Zamora
1101 Chicago Ave.
McAllen, Texas 78501

**Appellee/Plaintiff:**                   Mo-Vac Services Company, Inc.

**Counsel for Appellee/Plaintiff:**     GARCIA & MARTINEZ, L.L.P.
Adrian R. Martinez
Alberto T. Garcia, III
6900 N. 10th St., Suite 2
McAllen, Texas 78504

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................ ii

TABLE OF CONTENTS ................................................................................. iii

INDEX OF AUTHORITIES ............................................................................ v

STATEMENT OF THE CASE ......................................................................... vi

STATEMENT ON ORAL ARGUMENT .......................................................... vi

ISSUES PRESENTED ................................................................................... vii

I.      The trial abused its discretion by allowing Mo-Vac's counsel to introduce evidence that was irrelevant, inadmissible, and highly prejudicial through impeachment on direct examination of Edmundo Ramirez, who was not offering any expert testimony in this matter, and such admission of evidence was calculated to cause and probably did cause the rendition of an improper judgment ............................................................... vii

II.     The trial court abused its discretion by entering a final judgment on the jury's verdict because the jury's verdict was not supported by sufficient evidence and was grossly excessive ............................................................ vii

STATEMENT OF FACTS ............................................................................... 2

SUMMARY OF THE ARGUMENT ............................................................... 8

ARGUMENT ................................................................................................ 9

I.      By Allowing Mo-Vac's Counsel to Question Edmundo Ramirez (Who Repeatedly Stated that he Was Not Offering any Expert Opinion in this Case) Regarding the Expert Testimony he Gave on Attorneys' Fees in a Wholly Unrelated Matter, the Trial Court Admitted Evidence that Was Completely Irrelevant, Inadmissible, Served No Other Purpose than to Confuse and Mislead the Jury, and Was Highly Prejudicial ...................... 9

A. Evidence Regarding Defendant's Attorneys' Fees Is Irrelevant in a Case Where Only Plaintiffs' Attorneys' Fees Are at Issue.....................9

B. Evidence of What a Particular Attorney of Law Firm Charges in a Particular Case Is Irrelevant in Determining Reasonable Attorneys' Fees Under the *Arthur Anderson* Factors.............................................12

C. Edmundo Ramirez Repeatedly Stated on the Witness Stand that he Was Not Offering any Expert Opinion in this Matter, and Was Therefore Not a Proper Witness on this Subject.................................14

D. Despite Mr. Ramirez's Repeated Assertions that he Was Not Serving as an Expert in this Case, Mr. Garcia Improperly Questioned Mr. Ramirez Regarding an Expert Opinion he Gave on Attorneys' Fees in an Entirely Separate and Wholly Unrelated Case...............................17

II. The Amount of Attorneys' Fees Awarded by the Jury and Entered in the Court's Final Judgment Was Not Supported by Sufficient Evidence and Was Grossly Excessive as a Matter of Law .............................................25

A. The Evidence Presented at Trial Was Insufficient to Support the Award of Attorneys' Fees ...............................................................25

B. The Award of Attorneys' Fees for the Sole Surviving Claim of Breach of Confidentiality Agreement Was Grossly Excessive as a Matter of Law .............................................................................................36

PRAYER.............................................................................................................42

CERTIFICATE OF COMPLIANCE....................................................................44

CERTIFICATE OF SERVICE ............................................................................44

APPENDIX .........................................................................................................45

# INDEX OF AUTHORITIES

## CASES

*MCI Telecomms Corp. v. Crowley*, 899 S.W. 2d 399 (Tex.App.—Fort Worth 1995, orig. proceeding [leave denied]) ...................................................................10, 13

*Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 s.w.2D 812 (Tex. 1997) ............................................................................... 12, 13, 18, 27, 35, 36, 41

*Land Rover U.K., Ltd. V. Hinojosa*, 2010 S.W.3d 604.............................................13

*Duinick Bros. v. Howe Precast, Inc.*, No. 4:06-CV-441, 2008 WL 4411641(E.D. Tex. Sept 23, 2008) .............................................................................13, 14, 18

*City of Laredo v. Montano*, 414 S.W.3d 731 (Tex. 2013).....................26, 29, 30, 31

*El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757 (Tex. 2012)....................................26, 29

*Smith v. Patrick W.Y. Tam Trust* 296 S.W.3d 545.............................................40, 41

*Wythe II Corp. v. Stone*, 342 S.W.3d 96...............................................................41

## RULES

Tex. R. App. P. 39............................................................................................vi

**STATEMENT OF THE CASE**

This is an appeal from a jury trial on the sole issue of the amount of reasonable and necessary attorneys' fees incurred by counsel for Mo-Vac Services Company, Inc. in connection with its only surviving claim of breach of confidentiality agreement. Appellant Total E&P USA, Inc. alleges error in the trial court's admission of evidence that was irrelevant, inadmissible, highly prejudicial, and had no probative value, and argues that the jury's verdict was not supported by sufficient evidence and was grossly excessive as a matter of law. Total E&P USA, Inc. seeks to have the Court of Appeals reverse the trial court's judgment and render judgment or, in the alternative, reverse the trial court's judgment and remand the case for a new trial to determine the specific amount of work performed and hours spend on the sole surviving claim of breach of confidentiality agreement against Total.

**STATEMENT ON ORAL ARGUMENT**

Appellant Total believes that oral argument would assist the Court in deciding the issues involved, and therefore respectfully requests an oral argument pursuant to Rule 39 of the Texas Rules of Appellate Procedure.

# ISSUES PRESENTED

I.      The trial abused its discretion by allowing Mo-Vac's counsel to introduce evidence that was irrelevant, inadmissible, and highly prejudicial through impeachment on direct examination of Edmundo Ramirez, who was not offering any expert testimony in this matter, and such admission of evidence was calculated to cause and did cause the rendition of an improper judgment.

II.     The trial court abused its discretion by entering a final judgment on the jury's verdict because the jury's verdict was not supported by sufficient evidence and was grossly excessive.

No. 13-15-00348-CV

---

**In the Court of Appeals for the Thirteenth Court of Appeals District
Corpus Christi, Texas**

---

**TOTAL E&P USA, INC.**
*Appellant*,

**v.**

**MO-VAC SERVICES COMPANY, INC.**
*Appellee*.

---

ON APPEAL FROM THE 275TH JUDICIAL DISTRICT COURT,
HIDALGO COUNTY, TEXAS

Trial Court Case Number C-023-05-E

---

**BRIEF OF APPELLANT TOTAL E&P USA, INC.**

---

TO THE HONRABLE JUSTICES OF THE COURT:

COMES NOW Appellant Total E&P USA, Inc. and files this Brief of

Appellant, requesting that the Court reverse the trial court's judgment and render

judgment or, in the alternative, reverse the trial court's judgment and remand the

case for a new trial to determine the specific amount of work performed and hours

spent on the sole-surviving claim of breach of confidentiality agreement against

Total.

**STATEMENT OF FACTS**

This case involves Appellee Mo-Vac Services Company, Inc. (hereinafter "Mo-Vac")'s claim for attorneys' fees incurred in connection with its sole surviving cause of action for breach of confidentiality agreement. (*See* Supp. C.R. 1: 73). Mo-Vac originally filed various claims in contract and tort (including breach of confidentiality agreement) against Appellant Total E&P USA, Inc. (hereinafter "Total") and Pool Well Services, Co. a/k/a Nabors Well Services (hereinafter "Pool"), as Intervenor in a suit arising from Total's award of a Blanket Services and Supply Agreement (a multi-year oil field services contract) to Pool rather than Mo-Vac. (*See id.*, at 56-59). In 2009, this case was tried to a jury and a verdict was rendered in favor of Mo-Vac on each of its claims against Total and Pool. (*See id.*, at 59). On October 16, 2009, the trial court signed a Final Judgment finding in favor of Mo-Vac on each of its claims, and finding that Total and Pool were jointly and severally liable for attorneys' fees to Mo-Vac in the amount of $433,912.50. (C.R. 1: 64-65). Total appealed the jury's findings. (*See* Supp. C.R. 1: 59).

On August 23, 2012, this Court of Appeals issued its Memorandum Opinion in which it reversed the jury's decision on each of Mo-Vac's claims against Total and Pool, except for breach of confidentiality agreement against Total, and

rendered a take-nothing judgment against Mo-Vac on each of its claim other than breach of confidentiality agreement against Total. (*Id.*, at 73-74). The Court of Appeals reversed the award of $433,912.50 in attorneys' fees to Mo-Vac (for which Total and Pool had been found jointly and severally liable by the lower court). (*See id.*, at 73, and C.R. 1: 73). The Court of Appeals remanded the case back to the trial court on the sole issue of the reasonable amount of attorneys' fees Mo-Vac accrued in connection with its only surviving claim of breach of confidentiality agreement against Total, the only surviving Defendant. (Supp. C.R. 1: 73).

Specifically, the Court of Appeals issued the following order for remand:

> Reverse the award of attorney's fees to Mo-Vac and **remand to the trial court to determine the amount of fees earned with respect to its successful breach of confidentiality agreement claim**.

(*Id.*) (emphasis added).

Despite this clear directive from the Court of Appeals that a new award of attorneys' fees was to be determined on remand for the sole remaining cause of action of breach of confidentiality agreement against the sole remaining Defendant in the case, Mo-Vac attempted to enforce the previous award of attorneys' fees (which had been rendered against both Defendants Total and Pool in joint and several liability). (*See* Supp. C.R. 1: 73, and C.R. 1: 56-71). Specifically, Mo-

Vac filed its Motion to Determine Attorneys' Fees wherein it requested that the trial court award a total of $433,912.50 in attorneys' fees for its work performed through the first trial. (*See* C.R. 1: 56-58). This is the same amount originally awarded to Mo-Vac in connection with its various claims against Defendants Total and Pool, and which was reversed on appeal. (*See* C.R. 1: 64-65, and Supp. C.R. 1: 73). Recognizing that a trial was necessary in order to comply with the Court of Appeals' order of remand on the issue of attorneys' fees, on October 11, 2013, Total requested that the trial court set a docket control conference and set a trial in this cause. (C.R. 1: 75-77). On January 27, 2015, the trial court issued an Order Re-Setting Trial Date, setting a trial date of April 13, 2015 for the second trial in this matter. (C.R. 1: 87).

On February 26, 2015, Mo-Vac filed a motion to compel Total to respond to discovery requests regarding the amount of attorneys' fees billed by Total's counsel in this case. (*See* C.R. 1: 89-96). Total filed a response to Mo-Vac's motion to compel, setting forth legal precedent establishing that the amount of attorneys' fees charged by opposing counsel is irrelevant and undiscoverable where only one side's attorneys' fees are at issue. (C.R. 1: 97-102). Further, Total set forth case law establishing that what one attorney or law firm charges for

attorneys' fees is irrelevant in determining a customary fee for the area. (*See id.*, at 100-101). On April 9, 2015, the trial court heard Mo-Vac's Motion to Compel. (R.R. 2: 1). After hearing arguments from both sides and the applicable case law presented by Total, the trial court sustained Total's objections to Mo-Vac's Motion to Compel the requested information regarding Total's attorneys' fees. (R.R. 2:29, lines 16-17).

The trial court re-affirmed its ruling on this issue shortly before trial:

Mr. Ramirez: My fees are patently irrelevant.

The Court: Well, I already ruled.

Mr. Ramirez: That's why I'm refreshing the Court. Because he thinks that you – because you already ruled on a Motion to Compel to produce them, and interrogatories, but then he can ask me on the stand. That's what he's going to try to do.

(R.R. 5: 14, lines 2-8).

Despite the fact that the **only** issue involved in this case was the amount of attorneys' fees accrued by Mo-Vac in connection with its breach of confidentiality agreement claim, counsel for Mo-Vac called to the witness stand Mr. Edmundo Ramirez (hereinafter "Mr. Ramirez"), counsel for Total, and questioned him regarding the expert witness testimony he gave in an entirely different case as to the reasonable and necessary attorneys' fees in that specific case. (*See* R.R. 5: 44

54). Total's counsel objected to the line of questioning on the grounds that it was irrelevant as Mr. Ramirez was not offering expert testimony in this case. (R.R. 5: 46, line 21—47, line 4; 47, line 19—48, line 21; 49, line 11—51, line 4). The trial court sustained some objections and overruled others. (R.R. 5: 46, line 21—47, line 4; 47, line 19—48, line 21; 49, line 11—51, line 4; 60, lines 1-16).

Mo-Vac called Adrian Martinez (hereinafter "Mr. Martinez"), Mo-Vac's lead counsel at the prior trial, to testify as an expert on attorneys' fees and to explain the attorneys' fees incurred in this case. (R.R. 5: 97-225). During his trial testimony, Mr. Martinez did not set forth the specific tasks and time incurred in connection with the sole surviving cause of action, breach of confidentiality agreement against Total. Instead, Mr. Martinez relied on a compilation (that was not created contemporaneously) from which he generalized that 90% of the time recorded could be attributed to the breach of confidentiality claim. (*See* R.R. 5: 126, lines 13-14; 133, line 22—134, line 8; 154, line 21—160, line 10). This testimony was not only insufficient, but, as discussed in detail below, was controverted by the testimony of Total's expert witness and the facts of this case. (*See* R.R. 6: 22, line 2—24, line 7, and R.R. 6: 27, line 24—29, line 6).

After a trial on the merits, the trial court submitted this cause to the jury. The jury returned a verdict for Mo-Vac in the following amounts set forth in the Charge of the Court:

$370,375.00 for the successful representation of the breach of confidentiality claim through trial;

$25,000.00 for future representation through appeal to the court of appeals, if one is taken;

$5,000.00 for future presentation at the petition for review stage in the Supreme Court of Texas, if the case comes before the Supreme Court of Texas;

$12,000.00 for future presentation at the merits briefing stage in the Supreme Court of Texas, if the case comes before the Supreme Court of Texas; and

$8,000.00 for future presentation through oral argument and the completion of proceedings in the Supreme Court of Texas, if the case comes before the Supreme Court of Texas.

(C.R. 1: 105-110; App. Ex. 1).

On April 30, 2015, the trial court entered a Final Judgment in the amounts awarded by the jury. (C.R. 1: 113-115; App. Ex. 2). On May 28, 2015, Total filed its Motion for New Trial arguing that there was insufficient evidence to support the amount of attorneys' fees awarded by the jury; that the trial court abused its discretion by allowing Mo-Vac's counsel to question Mr. Ramirez regarding the details of a specific expert opinion he gave in an unrelated case

because such evidence was irrelevant, inadmissible, and highly prejudicial; and that the jury's award of attorneys' fees was grossly excessive as a matter of law. (C.R. 1: 116-129). Mo-Vac filed a response to Total's Motion for New Trial, Total filed a reply, Mo-Vac filed a supplemental response, and then Total filed a supplemental reply. (*See* C.R. 1: 130-145, 146-190; Supp. C.R. 1: 75-77, 78-80). A hearing was held on Total's Motion for New Trial on June 16, 2015. (R.R. 9: 1-12). On July 2, 2015, the trial court issued an Order denying Total's Motion for New Trial. (C.R. 1: 191). Total timely filed the instant Appeal. (*See* C.R. 1: 192-194).

## SUMMARY OF THE ARGUMENT

The trial court erred in allowing Mo-Vac's counsel to question Mr. Ramirez regarding the details of the expert opinion he offered in a separate case, wholly unrelated to the one at bar. The evidence Mo-Vac's counsel sought to and did in fact illicit through improper impeachment on direct exam was inadmissible, highly prejudicial, contained no probative value, was irrelevant, and its admission caused the rendition of an improper judgment.

The trial court further erred by upholding the jury's verdict because the jury's verdict was not supported by sufficient evidence and was grossly excessive as a matter of law. Mo-Vac's counsel failed to provide contemporaneous time

records, itemized records, bills, or any other documentary evidence showing the specific amount of time and work performed in connection with Mo-Vac's sole surviving cause of action for breach of confidentiality agreement. The evidence presented by Mo-Vac consisted of generalized summaries prepared after the fact and failed to differentiate the specific amount of time spent on the only claim at issue (breach of confidentiality agreement against the only remaining Defendant) from the other claims presented at trial against both Defendants which were subsequently dismissed. As such, there was insufficient evidence to support the jury's verdict. Moreover, the amount of attorneys' fees ultimately awarded by the jury was grossly excessive compensation for the sole claim of breach of confidentiality agreement.

## ARGUMENT

### I.
### By Allowing Mo-Vac's Counsel to Question Edmundo Ramirez (Who Repeatedly Stated that he Was Not Offering any Expert Opinion in this Case) Regarding the Expert Testimony he Gave on Attorneys' Fees in a Wholly Unrelated Matter, the Trial Court Admitted Evidence that Was Completely Irrelevant, Inadmissible, Served No Other Purpose than to Confuse and Mislead the Jury, and Was Highly Prejudicial

**A.  Evidence Regarding Defendant's Attorneys' Fees Is Irrelevant in a Case Where Only Plaintiff's Attorneys' Fees Are at Issue**

The sole issue before the trial court on remand was the amount of reasonable and necessary attorneys' fees incurred by Mo-Vac's counsel in connection with Mo-Vac's only surviving cause of action for breach of confidentiality agreement. Accordingly, only Mo-Vac's attorneys' fees were relevant in this case. *See MCI Telecomms Corp. v. Crowley*, 899 S.W. 2d 399, 403 (Tex.App.—Fort Worth 1995, orig. proceeding [leave denied]) (stating that there is no Texas authority that permits a plaintiff to discover the defendant's attorneys' fees where only the plaintiff's attorneys' fees are at issue in the case). In fact, the Fort Worth Court of Appeals stated "[b]ased on this absence of authority, along with clearcut Texas law on what evidence is needed to prove attorneys' fees and the relevant factors to consider, [the defendant's] attorney fees in its defense of this case are 'patently irrelevant' and are not reasonably calculated to lead to the discovery of admissible evidence." *Id.*

Based on this legal standard, the trial court prevented Mo-Vac from conducting discovery as to Total's attorneys' fees in this case. (*See* R.R. 2: 14-29). Moreover, the trial court affirmed its ruling before trial and stated that it would sustain objections to questioning regarding Total's attorneys' fees. Specifically, the following exchange occurred prior to the beginning of trial:

The Court:  Mr. Garcia, I'm going to make a ruling that you cannot get into those attorneys' fees and that Mr. Ramirez' charges to whoever, whatever clients.  I'll let you get into it if Mr. Ramirez takes the stand and testifies to his fees as an expert or attorney for impeachment purposes.  But if he doesn't want to take the stand [sic].  But you can call him.

Mr. Garcia:  I am going to call him.  I don't want to interrupt the jury and just to seek clarification.  Because I know how frustrating –

The Court:  If he refuses to testify about those attorneys' fees, Counsel, I will – and if his Co-Counsel –

Mr. Ramirez:  She will object.

The Court:  I will sustain the objections.  But if you want to appeal that ruling –

(R.R. 5:  19, lines 10-25).

Here, the Court acknowledged that it would be improper to question Mr. Ramirez on attorneys' fees in another, wholly unrelated case if he were not testifying as an expert.  However, the court then went on to contradict its prior statement and essentially advised Mr. Garcia that he could do anything and ask whatever questions he wanted.

The Court:  I've already made my ruling, Counsel.  I don't know what questions you will ask, but if they object, don't be surprised if I sustain the objection.

Mr. Garcia:  So I cannot –

The Court: I'm not saying that you cannot do anything. You can ask whatever questions you want. But I'm just saying that if they object, I will most likely sustain them.

(R.R. 5: 23, lines 1-8).

## B. Evidence of What a Particular Attorney or Law Firm Charges in a Particular Case Is Irrelevant in Determining Reasonable Attorneys' Fees Under the *Arthur Anderson* Factors

The parties agreed that the factor test set forth in *Arthur Andersen & Co. v. Perry Equip. Corp.* for determining reasonable attorneys' fees was the applicable standard for the jury to use in this case. (R.R. 5: 17, lines 7-12). Specifically, *Arthur Andersen* sets forth the following eight factors that a factfinder should consider when determining the reasonableness of a fee:

1. the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

2. the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;

3. the fee customarily charged in the locality for similar legal services;

4. the amount involved and the results obtained;

5. the time limitations imposed by the client or by the circumstances;

6. the nature and length of the professional relationship with the client;

7. the experience, reputation, and ability of the lawyer or lawyers performing the services; and

8.     whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

945 S.W.2d 812, 818 (Tex. 1997).

Conspicuously absent from this list of factors is the billing rates and practices of opposing counsel, as well as the amount of attorneys' fees charged by a specific attorney or law firm in a particular case. The only one of these eight factors that comes close to addressing fees charged by other attorneys is the third factor - the fee customarily charged in the locality for similar legal services. However, courts have held that this factor may not be used to introduce evidence of what another particular law firm charges. *See Duininck Bros. v. Howe Precast, Inc.*, No. 4:06-CV-441, 2008 WL 4411641, at *3 (E.D. Tex. Sept. 23, 2008) (citing *MCI Telecomms. Corp.*, 899 S.W.2d at 403). Specifically, "what a single law firm charges for a particular set of services and its choice of tactics in representing a given client are issues decidedly distinct from deciding what constitutes a customary fee." *Id.* (applying Texas law). The court in *Duininck Bros.* went on to reason that the third factor used to determine attorneys' fees[1] "is plainly aimed at a

---

[1] The court in *Duininck Bros.* cites to the factors for determining attorneys' fees set forth by the Texas Supreme Court in *Land Rover U.K., Ltd. v. Hinojosa*, 210 S.W.3d 604, 607 (Tex. 2006). However, these factors are identical to the factors for determining attorneys' fees set forth by the Texas Supreme Court in its earlier opinion of *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997), relied on by the parties in the instant case.

composite of legal fees charged for a given service," and that "focusing on one law firm's billing practices is unhelpful in determining what is 'customary.'" *Id.*

**C.**     **Edmundo Ramirez Repeatedly Stated on the Witness Stand that he Was Not Offering any Expert Opinion in this Matter, and Was Therefore Not a Proper Witness on this Subject**

Despite the clear case law establishing that the amount charged by an individual law firm for a specific set of services is decidedly distinct from deciding what constitutes a customary fee, Albert Garcia (hereinafter "Mr. Garcia"), Mo-Vac's lead counsel at trial, proceeded to circumvent this rule during trial. (*See* R.R. 5: 44-54). Specifically, Mr. Garcia called Mr. Ramirez, lead counsel for Total, to the stand as an expert witness on attorneys' fees. (*See* R.R. 5: 42-63). However, as set forth in the chart below, Mr. Ramirez repeatedly stated that he was not offering any expert opinion in this case, that Total had designated another attorney to testify as an expert on attorneys' fees to testify at trial, and that Mr. Ramirez's only role at trial was as an advocate on behalf of Total:

| Question by Mo-Vac's Counsel | Response by Mr. Ramirez |
|---|---|
| Q. You designated yourself as an expert in this case on attorneys' fees; is that right? <br> (R.R. 5: 42, lines 19-20) | A. I had – **I'm not going to testify as an expert.** Mr. Thomas, who's sitting behind the screen, he will be the designated expert. I had designated myself in case something ever happened to Mr. Thomas. <br> (R.R. 5: 42, lines 21-24) <br> (emphasis added) |
| Q. Okay. But, nonetheless, you did designate yourself as an expert? <br> (R.R. 5: 42, line 25—pg. 43, line 1) | A. I have in the past. But **I have no intention of testifying as an expert in this case.** <br> (R.R. 5: 43, lines 2-3) <br> (emphasis added) |
| Q. And **do you consider yourself an expert, yourself on attorneys' fees?** <br> (R.R. 5: 43, lines 4-5) <br> (emphasis added) | A. **Not in this case.** But I have testified in the past in other cases as an expert on attorneys' fees. <br> (R.R. 5: 43, lines 6-7) <br> (emphasis added) |
| Q. Just like you're testifying as an expert in the second trial in this case? <br> (R.R. 5: 49, lines 4-5) | A. **I'm not testifying as an expert in this case.** You can say that all you want to, but that's – <br> (R.R. 5: 49, lines 6-7) <br> (emphasis added) |
| Q. Well, **I've designated you as an expert.** <br> (R.R. 5: 49, line 8) <br> (emphasis added) | A. Thank you for that. **But that's not my role in this trial.** <br> (R.R. 5: 49, lines 9-10) <br> (emphasis added) |
| Q. To be fair, do you or do you not have an opinion as what is a reasonable hourly rate for Mr. Martinez' work? <br> (R.R. 5: 62, lines 2-3) | A. The purpose for this trial, sir. **I'm not the expert.** There's an expert sitting in the courtroom that's going to testify. <br> (R.R. 5: 62, lines 4-6) <br> (emphasis added) |
| Q. We will talk to him in a little bit? <br> (R.R. 5: 62, line 7) | A. Get to him. Because **I'm not here to give opinions. I'm here to advocate for my client.** Again, I listed |

| Question by Mo-Vac's Counsel | Response by Mr. Ramirez |
|---|---|
| | myself in case – thank God nothing happened to Mr. Thomas – in a clutch I needed to testify. (R.R. 5: 62, lines 8-12) (emphasis added) |
| Q. That's right. Okay. So to be fair to you, do you or do you not have an opinion as to what is a reasonable hourly rate for Mr. Martinez? (R.R. 5: 62, lines 19-21) | A. **For the purposes of this trial, that's not my role here. I am not testifying as an expert.** (R.R. 5: 62, lines 22-23) (emphasis added) |
| Q. We understand that. But **no opinion?** (R.R. 5: 63, line 2) (emphasis added) | A. **No opinion.** (R.R. 5: 63, line 3) (emphasis added) |

As set forth in detail above, Mr. Ramirez repeatedly stated that he was not offering any expert opinion in this case. Total presented Ray Thomas as its testifying expert witness on attorneys' fees. Accordingly, any expert testimony on attorneys' fees by Mr. Ramirez on behalf of Total was rendered unnecessary and cumulative in light of Mr. Thomas's presence at trial. While Mr. Ramirez is properly qualified as an expert on attorneys' fees, he was not serving as one for purposes of trial. (*See* R.R. 5: 43, lines 4-7). As Mr. Ramirez clearly stated, his sole role at trial was as an advocate on behalf of Total and he was not offering any expert opinion in this matter. (R.R. 5: 62, lines 19-23).

**D.** **Despite Mr. Ramirez's Repeated Assertions that he Was Not Serving as an Expert in this Case, Mr. Garcia Improperly Questioned Mr. Ramirez Regarding an Expert Opinion he Gave on Attorneys' Fees in an Entirely Separate and Wholly Unrelated Case**

In total disregard of the fact that Mr. Ramirez was not serving as an expert in this case, Mr. Garcia proceeded to call Mr. Ramirez to the witness stand as an expert on attorneys' fees. (R.R. 5: 41, lines 21-23). In addition to Mr. Ramirez's express denials under oath that he was offering an opinion in this matter, Mr. Ramirez had not submitted any form of expert report in this matter and had not been deposed as an expert in this case.[2]

As made abundantly clear by Mr. Garcia's direct examination, Mr. Garcia's sole purpose in calling Mr. Ramirez as an expert at trial was to introduce evidence through impeachment that would otherwise be inadmissible. (*See* R.R. 5: 49, line 11—51, line 4). Specifically, Mr. Garcia questioned Mr. Ramirez regarding expert testimony he gave on attorneys' fees in a separate and wholly unrelated matter. (R.R. 5: 44, line 25—54, line 21). Such evidence was irrelevant, inadmissible, highly prejudicial, had no probative value, and was an attack on Mr. Ramirez's

---

[2] Total did initially designate Mr. Ramirez as an expert in this matter. However, the designation merely stated that Mr. Ramirez would serve as an expert on attorneys' fees and attached Mr. Ramirez's resume. There was no specific explanation of the testimony he would give in this particular case or any statement pertaining to this particular case in the designation. More importantly, as Mr. Ramirez explained during trial, his designation was rendered unnecessary by Mr. Thomas's appearance at trial as the testifying expert on attorneys' fees on behalf of Shell. (*See* R.R. 5: 42, lines 19-24; 62, lines 2-12).

credibility.  In fact, as set forth above, such evidence regarding attorneys' fees recovered by a particular firm in a specific matter is irrelevant and should not be considered in determining the reasonableness of attorneys' fees under the *Arthur Anderson* factors.  *See Duininck Bros.*, No. 4:06-CV-441, 2008 WL 4411641, at *3 ("what a single law firm charges for a particular set of services and its choice of tactics in representing a given client are issues decidedly distinct from deciding what constitutes a customary fee;" "focusing on one law firm's billing practices is unhelpful in determining what is 'customary'").

Total's counsel objected to Mr. Garcia's improper questioning on relevance grounds, and the court properly sustained the majority of these objections:

> Q.  <u>Playboy</u> USA.  And did you charge them so that you could testify as an expert?
>
> A.  Yes.
>
> Q.  And did you charge them a flat rate?  An hourly rate?  How did you charge them?
>
> A.  I have no recollection on that.
>
> Q.  You don't recall charging them?
>
> A.  I charged them.  I know that.  I did charge them.
>
> Q.  Do you recall – you don't recall how much.
>
> Ms. Zamora:  Objection, Your Honor.  Relevance.

The Court:  I'm sorry?

Ms. Zamora:  Objection, relevance.

Mr. Garcia:  Your Honor, I'm asking what he charged as an expert to testify in another case.  Not what he's charging as an attorney in this case.

The Court:  Your objection will be sustained.

(R.R. 5:  46, line 13—47, line 4).

Q.  Okay.  And did you give testimony about what is a reasonable fee for those 15 or 20 lawyers?

Ms. Zamora:  Your Honor, I will object to relevance.  Mr. Ramirez is not being – we're not putting him on the stand as an expert as to attorneys' fees in this case.  So I think it is irrelevant.

Mr. Garcia:  I designated Mr. Ramirez as an expert.  He designated himself as an expert.  He is an expert based on his qualifications. Whether he chooses to say, I'm testifying as an expert or not is irrelevant.  He is an expert because he has specialized knowledge that will assist the jury.  And if he's testified as an expert in other cases, I'd like to know what his opinions are there to judge them against the credibility of whatever opinions he might give here.  So it's relevant to the credibility and experience.

Ms. Zamora:  We're not putting him on as an expert on attorneys' fees.  Mr. Ramirez explained earlier, it was only in case Mr. Thomas was not available.  Mr. Thomas is here.  We are not offering him.  If we did offer him, then he could be cross examined on that.  But he's putting him on, so we are not –

Mr. Garcia:  Your Honor, I designated Mr. Ramirez as an expert because he is an expert on attorneys' fees.  So I designated him as an expert.  And I haven't withdrawn that designation.

The Court: The objection is at this time sustained, Counsel.

(R.R. 5: 47, line 19—48, line 21).

Even though the trial court sustained Total's objections as set forth above, this prejudicial line of questioning was still heard before the jury and Mo-Vac was therefore able to confuse and mislead the jury through this improper impeachment. More importantly, the trial court overruled one of Total's objections and allowed Mr. Garcia to engage in this improper questioning as to Mr. Ramirez's expert testimony on attorneys' fees in another, wholly unrelated case.

Q. Right. In the second trial you testified as an expert in the <u>Playboy</u> case?

A. Correct.

Q. Just like you're testifying as an expert in the second trial in this case?

A. I'm not testifying as an expert in this case. You can say that all you want to, but that's –

Q. Well, I've designated you as an expert.

A. Thank you for that. But that's not my role in this trial.

Q. Okay. Now, Mr. Ramirez, isn't it true that in the <u>Playboy</u> case, <u>Playboy</u> US recovered $410,000 for their breach of contract case?

> Ms. Zamora: Objection, Your Honor, to relevance. Once again, Mr. Ramirez is not giving an opinion, an expert opinion. And Mr. Garcia is forcing him to essentially.

Mr. Garcia:  Just asking if it's true that that's what the jury recovered in the <u>Playboy</u> case.

Ms. Zamora:  It is not relevant because he is not an expert on attorneys' fees.

Mr. Garcia:  Your Honor, again, with all due respect, as Your Honor knows, and Counsel knows as well, what determines whether somebody is an expert is not their self-designation, but if they have experience, training and education.

The Court:  What was your question, Mr. Garcia?

Mr. Garcia:  Isn't it true that in <u>the Playboy</u> case, <u>Playboy</u> US recovered $410,000 for their breach of contract case?

Ms. Zamora:  I don't know how those facts are relevant here.

Mr. Garcia:  Your Honor, we have an agreed Jury Charge that has been filed.  The parties agree that the eight factors from the <u>Arthur Anderson</u> case and Texas Supreme Court case says the amount of recovery is relevant to the amount of attorneys' fees.  I'm going to ask him, my next question is:  Didn't you testify that the lawyers should recover more than $2 million in attorneys' fees, when all they recovered was $400,000?

Ms. Zamora:  Your Honor, he's trying to cross – apologize.

Mr. Garcia:  So – I'm sorry.

Ms. Zamora:  Go ahead.

Mr. Garcia:  So I will ask him:  Why is it okay in the <u>Playboy</u> case when you testified, but it is not okay here?  It goes to the expert witness' credibility.

Ms. Zamora:  But he's cross-examining him when he hasn't given an opinion as to this case.  So it is improper and irrelevant.

The Court:  **Well, I will overrule the objection.**

Q.  Mr. Ramirez, my question was: Isn't it true that the jury in the <u>Playboy</u> case just on the second floor here awarded <u>Playboy</u> US $410,000?

A.  I don't recall what the award was, but that was – they were not seeking the contract.  They were getting sued for breach of contract, which is very different.  <u>Playboy</u> there was defending that case.  They were not seeking to enforce the contract.  So the facts I cannot comment on because the facts are totally different.

(R.R. 5:  49, line 1—51, line 14) (emphasis added).

By overruling this objection, the trial court allowed this improper questioning to continue.[3]

---

[3] Q.  Actually, Mr. Ramirez, if you'll recall when it came back on the second trial Playboy US counter sued and that's why they were entitled to recover attorneys' fees.  As you know, as an expert witness, a party that's merely defending a case can't get attorneys' fees.  And since you are testifying for attorneys' fees, it's –
A.  I don't agree with that statement.  I'm not going to argue the law with you, Mr. Garcia.  But I definitely do not agree with that statement that you just made.
Q.  Mr. Ramirez, you can interrupt me.  It doesn't hurt my feeling.  But Ms. Robledo does have a job to do, and she can't do it if we're both talking.
A.  Go ahead.
Q.  In that case <u>Playboy</u> USA counter sued Playboy Mexico and recovered $410,000.  And you gave the opinion that <u>Playboy</u> USA's lawyers can recover $2,180,000 in attorneys' fees, five times the amount that <u>Playboy</u> USA recovered.  Isn't that true?
A.  No.
Q.  You deny that?
A.  No, I'm not denying that.  Those – it's a different case.  They're counter claims.  They're numerous contracts.  There are several counter claims, and <u>Playboy</u> was defending.  It makes a big difference.
Q.  Okay.

The trial court erred in allowing this irrelevant and prejudicial line of questioning, which was asked solely for the purpose of introducing otherwise improper evidence through impeachment.  Further, by his argument, Mr. Garcia introduced to the jury the idea that Mr. Ramirez had advocated something completely different, and that "if it was okay there, why should it not be okay here."  This improper line of questioning absolutely influenced the jury, caused the jury to question Mr. Ramirez's credibility, and prejudiced the jury against Total.

Mr. Garcia's intent of improperly influencing the jury through this irrelevant and prejudicial line of questioning regarding a completely unrelated case was further evidenced by Mr. Garcia's attempt to introduce this evidence during the direct examination of Mo-Vac's expert witness, Mr. Martinez. Specifically, Mr. Garcia asked Mr. Martinez on the stand whether he reviewed the *Playboy* case to prepare for his expert testimony, and he then attempted to go into the details of the case and the attorneys' fees awarded.  (R.R. 5:  169, line 18—170, line 8).  Total's counsel objected to this line of questioning as wholly irrelevant to the sole issue of reasonable and necessary attorneys' fees incurred by Mo-Vac in this case.  (Id., at 170, line 9—174, line 23).  While the trial court ultimately sustained Total's

A.  And again, I think the issue here is what are your fees, period.  That's what the jury needs to decide.
(R.R. 5:  51, line 15—52, line 16).

objection, Mr. Garcia used the opportunity in responding to Total's objection to present to the jury improper evidence regarding the expert testimony given by Mr. Ramirez in a wholly unrelated case and the attorneys' fees awarded in that case:

The Court: Let me inquire of you, Mr. Garcia, was that <u>Playboy</u> case involving a breach of the Confidentiality Agreement?

Mr. Garcia: It was. It was a written license agreement. Because –

Mr. Ramirez: Sorry. It was not a breach of Confidentiality Agreement.

Mr. Garcia: No. It was a breach of a license agreement, that is what I said. It was a breach of contract. In this case, it was called a license agreement. The license was what Playboy USA was giving Mexico the right to distribute their magazine. When Playboy Mexico sued Playboy USA, Playboy USA counter sued. So they sued for breach of that license agreement. And the opinion from the Court of Appeals that Mr. Martinez is relying on says just that. To clarify what Mr. Ramirez was representing. The fact of the matter is, and it's in the opinion he relies on, Playboy USA counter sued. They prevailed in that counter suit, and the jury awarded $410,000. The testimony from Mr. Ramirez was that those lawyers deserved $2.1 million. So the jury awarded $400,000 in actual damages. And five times that, $2.1 million, in attorneys' fees. That's why. So there was a claim for breach of the contract. It was in the form of a Counter Claim. And that's why it is –

The Court: I don't remember the testimony that was elicited from Mr. Ramirez. But did you already testify about that attorneys' fees?

Mr. Ramirez: Your Honor, I didn't testify about attorneys' fees. He put me on the stand. What he put me on the stand was to get what he just got in right now in front of the jury, unsworn testimony that he was trying to get out there. And this is getting way far field. And we're going to have to try this thing again and again. Here there is only one issue: Is [sic] Mr. Martinez' and Mr. Garcia's fees reasonable and necessary? They're not

going to decide anything else. We promised one day, one and a half day trial here. We will be here for months. So I object to any testimony, other than whether or not the fees that they're trying to seek from these folks are customary, reasonable and necessary. Everything else is irrelevant. And I also object to the side-bar, that misleading non sworn testimony.

(R.R. 5: 171, line 21—173, line 15).

Clearly, Mr. Garcia's goal was to introduce to the jury the testimony given by Mr. Ramirez as a testifying expert in a completely different case, for the purpose of calling Mr. Ramirez's credibility into question and leading the jury to believe that the reasoning applicable in the other case might apply here. Such improper introduction of evidence prejudiced the jury.

## II.
## The Amount of Attorneys' Fees Awarded by the Jury and Entered in the Court's Final Judgment Was Not Supported by Sufficient Evidence and Was Grossly Excessive as a Matter of Law

A.  **The Evidence Presented at Trial Was Insufficient to Support the Award of Attorneys' Fees**

There was insufficient evidence offered at trial to support the award of attorneys' fees. As set forth in detail above, this case was remanded back to the trial court by the Thirteenth Court of Appeals on the sole issue of attorneys' fees incurred in connection with Mo-Vac's only surviving claim of breach of confidentiality agreement against Total. (Supp. C.R. 1: 18). While the original

trial of this case involved six claims asserted by Mo-Vac against two separate defendants, only Mo-Vac's claim of breach of confidentiality agreement against Total survived appeal. As such, none of the work performed or attorneys' fees incurred in connection with any claim other than this sole surviving claim should have been presented to and considered by the jury in the second trial. It was clear from the Court of Appeals' directive that only those attorneys' fees incurred in connection with the breach of confidentiality agreement claim were before the trial court on remand. (*See* Supp. C.R. 1: 68-69, 73).

Accordingly, the documentation of time spent by Mo-Vac's counsel in connection with Mo-Vac's breach of confidentiality agreement claim became extremely important in the second trial of this case. The Texas Supreme Court has articulated that record keeping is of great significance in analyzing attorneys' fees. *See City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013) (citing *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 763 (Tex. 2012). Here, however, rather than present contemporaneous time records or billing statements from which work performed in connection with the breach of confidentiality agreement claim could easily be segregated out, Mo-Vac's counsel instead proffered a summary of time spent on the case that was created after the fact. Mo-Vac's counsel and testifying

expert on attorneys' fees, Adrian Martinez (hereinafter "Mr. Martinez"), explained

this summary of work performed as follows:

> Q. Okay. And this document is how many pages long?
>
> A. 20 something pages. I forget the exact number, but – it is 22 pages.
>
> Q. Okay. And the purpose of the document is to reflect what? Can you explain to the jury?
>
> A. Sure. This information comes from our – it's a compilation of all of the work that I did in all of my records, from what's on in [sic] the computer, from everything that is in the file. And what it represents is, from the moment you get into the case, what you do. It's a compilation of everything we're doing. And that's what that is.

(R.R. 5: 133, line 22—134, line 8).

Contrary to Mr. Martinez's testimony and his assertion that the

"compilation" provided sufficient evidence of the work performed, Total's expert

witness on attorneys' fees, Ray Thomas (hereinafter "Mr. Thomas"), provided the

following opinion during his trial testimony:

> Q. And by the case law that you just read, interpreting the <u>Anderson</u> factor also, isn't it true that the time keeping function is a critical factor?
>
> A. It is important. And, I mean, I want – out of fairness to them, it says: Contemporaneous time records should be kept, or other documentation that is reasonably made at the same time. And I note, Mr. Martinez says in his deposition that what he had is [sic] these e-mails that he would either write to his legal assistant, or otherwise, where he would sort of document what he did that day. **But he doesn't have those e-mails anymore, according to**

**his testimony. So there's no documentation that is made contemporaneous that we can look at.**

(R.R. 6: 71, line 16—72, line 4) (emphasis added).

Significantly, when questioned regarding his prior deposition testimony, Mr. Martinez admitted that this "compilation" of his work was not made contemporaneously:

Q. Okay. Was this done contemporaneously at the time –

Your answer: No.

-- of the entry?

No.

A. That's right. The entries into this document were not kept contemporaneously. I agree with that. I'm not changing my testimony.

(R.R. 5: 192, lines 1-8).

Moreover, Mr. Martinez conceded that he did not keep contemporaneous time logs or time slips in this matter, and that he never sent a bill to the client:

Q. Excuse me. That was not – those were not time slips, were they?

A. That is not a time slip? Of course not.

Q. And you kept no time slips?

A. No, I did not keep time slips. That's not the only mode of keeping time.

(R.R. 5: 189, lines 10-15).

Q. In fact, you've never sent Mr. Andrews a bill?

A. Never sent him a bill.

(R.R. 5: 182, lines 12-13).

The Texas Supreme Court has stated, in cases analyzing the lodestar method for determining attorneys' fees, that hours not properly billed to one's client are also not properly billed to one's adversary. *See City of Laredo*, 414 S.W.3d at 736; *El Apple I, Ltd.*, 370 S.W.3d at 762. Total's expert witness, Mr. Thomas, provided the following explanation regarding record keeping in the context of the case at bar:

Q. Now, we've covered the fact that in your opinion the records that they have are unreliable, correct?

A. It is some evidence. But, you know, I would – I can't – I would discount – they're not detailed enough for me to make a meaningful review. And there's some significant errors that have already been noted.

Q. And is record keeping a very important factor in this matter in determining attorneys' fees?

A. When you're going to come into court, well, if you want your client to pay you for your legal fees, the clients insist upon – most clients will insist upon a reasonably detailed narrative so that when they get a bill for $20,000 at the end of the month, they can review the bill and see whether or not they are getting the value of that $20,000. And if you don't put enough detail in there, they don't like to pay, they won't pay. They pick up the phone and say: What is this? So if you will come into a court of law and ask a jury to award attorneys' fees, the same standard should apply. And you ought to be able to take a look at the bill and have confidence that these were records,

that this is sufficient documentation of what it is the lawyer did. Just so you can determine whether that's reasonable or necessary to do.

(R.R. 6: 35, line 12—36, line 10).

While time records or billing statements are not the only method of establishing attorneys' fees, in all but the simplest of cases, attorneys still have to refer to some type of record or documentation in order to provide testimony regarding the details of their work. *See City of Laredo*, 414 S.W.3d at 736. For example, in *City of Laredo*, the court found that the testimony of one of the attorneys regarding her unbilled trial work was some evidence on which to base an award of attorneys' fees because it concerned contemporaneous or immediately completed work for which she had not had time to bill, and the billing inquiry involved contemporaneous events and discrete tasks. *See id.*, at 737. In contrast, the court in *City of Laredo* found that the testimony provided by the other attorney in the case, who did not make any contemporaneous record of his time or prepare any bills or invoices, was not evidence of a reasonable attorney fee where he testified that he spent a lot of time getting ready for the lawsuit, conducted a lot of legal research, visited the premises many, many times, and spent countless hours on motions and depositions. *See id.*

The testimony provided by Mr. Martinez in this case is similar to that of the attorney in *City of Laredo* whose testimony was found insufficient. Here, rather than describe discrete tasks performed specifically in furtherance of the breach of confidentiality agreement claim, Mr. Martinez instead testified that he had to sift through thousands of pages within boxes of documents in order to piece together the evidence to support the breach of confidentiality agreement. (*See* R.R. 5: 150, line 23—154, line 3). The testimony provided by Mr. Martinez did not meet the level of specificity found to be sufficient evidence in *City of Laredo*.

As set forth above, here, Mr. Martinez failed to provide any contemporaneous evidence of the work he performed in this case. While Mr. Martinez claims to have used emails in preparing his summary of work performed, those emails do not still exist. The flaws in Mr. Martinez's summary are clearly shown by the fact that Mr. Martinez documented time for three different attorneys for their attendance at trial on days when trial was not actually in session.

Q. And what does the entry say?

A. Well, which one do you want me to tell you about? For me? The ones for Mr. Valdez? Or Mr. Garcia? Which ones do you want?

Q. A, B and C.

A. A, B, C. We start with 4/22.

Q. Let's stick to the date we're talking about, 4/24.

A. Sorry. Hold on. There's one for me of ten hours.

Q. Okay. What does it say?

A. Trial, A.R.M., which is me.

Q. And that means you attended trial that day?

A. Yes, sir.

Q. And then next entry says trial for Mr. Garcia?

A. Yes, Mr. Garcia. And then there's one for Reymundo Valdez.

Q. And they're all different hours, correct?

A. Yes, sir.

Q. And then the one prior to that, the 4/23, what is the entry for you? You attended trial?

A. Yeah, yes sir.

Q. And Mr. Garcia?

A. Yes, sir.

Q. Are you sure that's correct?

A. Well, are you –

Q. I'm asking the questions, Mr. Martinez. Are you sure that that record is reliable, and that you attended trial, and all three of the attorneys that you have on there attended trial that date?

A.  You know, if you have another document that says that we weren't in trial that date, then obviously this is incorrect, sir.

Q.  I have another document.

A.  Well then show it to me because it could be incorrect.  I'm not going to mince words and dates with you.  But is that the only dates that you're –

Q.  I have the record.  And the record does not reflect that we had trial that day.  The Court took off those two days.

A.  I do remember that we were off some days.  Okay. What other days do you have that show that besides those two?

(R.R. 5:  208, line 4—209, line 20).

Such mistakes as illustrated above are clearly the result of failing to document time contemporaneously and keep billing records.  Total's expert, Mr. Thomas, provided the following explanation:

Q.  Do you have an opinion – I will go briefly back to that – the time – remember yesterday we went through Mr. Martinez' time slips.  I think he called them a compilation.  Have you had an opportunity to review those before this trial?

A.  I did.

Q.  Do you have an opinion as to the trustworthiness of those?

A.  Yeah.  What you're talking about is the compilation, that summary that was prepared by Mr. Martinez or his staff that documents the days that they worked, some of the tasks that they performed, and the amount [sic] hours that they were charging, or billing for a particular day of work.  I reviewed them.  I reviewed them carefully.  And I – my concerns about them are the same ones that I articulated yesterday.  **Time is supposed to be kept on a**

**daily basis, or contemporaneous. And the reason is so they can be accurate. And what we saw yesterday, and Mr. Martinez has already admitted or testified that he didn't keep his time on a contemporaneous basis. He did it after the fact. Looked back, looked at his file, looked at his computer, looked at different folders, looked at the paperwork, and sort of went back and tried to recreate it. When that happens, you're going to have mistakes, including significant mistake [sic].** We saw some of that yesterday when we saw that they billed, for example, one lawyer 16 hours one day, another lawyer 12 hours one day, another lawyer 10 hour [sic] for one day for being in trial when they weren't in trial. I'm certainly not saying that Mr. Martinez would have done that out to cheat, or dishonesty, or anything like that. I'm not saying that that's not the kind of gentleman I know these men to be. But what I am saying is when you don't do it contemporaneously, those are the kind of errors that come up. You're making mistakes like that saying, well, I'm in trial on that day. When they weren't in trial that day. We know that. Also when you look at their – at the summary that they prepared, there's [sic] supposed to be done with sufficient detail so that one can review those and make a meaningful review of a determination as to whether those tasks were necessary. Many of the time slips – they're not time slips. Many of the entries that were created in the summary, that was created after the fact. Don't say who the lawyer was, or individual who was performing the task. And then many of them that do have initials, have an insufficient description to be able to tell what they were doing. So we can't tell whether that work was necessary. **For example, preparing for trial. Preparing for trial. Maybe if you're in trial you can put trial 12 hours. We know what trial is. But if you're preparing for trial, what are you doing to prepare for trial? There's a myriad of things that you could be doing. And it is important to know what those are, and to detail those. You have to be able to tell whether those are necessary tasks. That's not there. So you can't conduct a meaningful review.**

(R.R. 6: 22, line 2—24, line 7) (emphasis added).

Applying the Texas case law discussed during his trial testimony to the case

at bar, Total's expert witness on attorneys' fees, Mr. Thomas, provided the

following opinion as to the sufficiency of the summary provided by Mo-Vac's counsel as evidence of the reasonable attorneys' fees incurred in this case:

> Q. Do you have an opinion, sir, now that we've discussed all eight <u>Arthur Anderson</u> factors, as to whether the amount requested by Mr. Martinez of $900,000 is reasonable and necessary for a recovery of $100,000?
>
> A. I do have an opinion.
>
> Q. And what is that opinion, sir?
>
> A. That it would be patently unreasonable in this case.

(R.R. 6: 36, lines 11-18).

Incredibly, as noted in Mr. Thomas's testimony set forth above, Mo-Vac requested approximately $900,000 in attorneys' fees in this second trial.[4] Mo-Vac made this request despite the fact that the original award in the first trial for attorneys' fees incurred in connection with six claims against two defendants was $433,912.50, which was to be split between the two defendants. Although Mo-Vac's counsel previously testified under oath that it should be awarded attorneys' fees at the rate of $250 an hour in this case, Mo-Vac's counsel asserted during the second trial that it had incurred attorneys' fees at the rate of $500 an hour. (*See* R.R. 5: 193, lines 20-25; and 195, lines 12-20)

---

[4] Taking Mo-Vac's counsel's assertion of the number of hours it spent on the breach of confidentiality claim, the total amount of attorneys' fees claimed by Mo-Vac comes out to approximately $900,000. (*See* R.R. 5: 199, line 10—200, line 14).

For the reasons set forth herein above, the evidence presented by Mo-Vac's counsel was insufficient to support the award of $370,375.00 in attorneys' fees for the sole surviving cause of action of breach of confidentiality agreement, for which Mo-Vac only recovered $100,000.

**B.      The Award of Attorneys' Fees for the Sole Surviving Claim of Breach of Confidentiality Agreement Was Grossly Excessive as a Matter of Law**

As set forth above, one of the *Arthur Andersen* factors (the applicable factor test in the case at bar) used to determine the reasonableness of attorneys' fees is **the amount involved and the results obtained**. *See Arthur Andersen & Co.*, 945 S.W.2d at 818. Here, Mo-Vac originally sought to recover approximately $10 million for various claims asserted against several defendants. (R.R. 5: 196, lines 18-20). At the first trial in this case, Mo-Vac was awarded $750,000 on all of its claims against Total, and $433,912.50 in attorneys' fees. (C.R. 1: 64-65). After an appeal of the first trial to this Court of Appeals, Mo-Vac ultimately recovered only $100,000 for its sole surviving claim of breach of confidentiality agreement against Total, indicating that the breach of confidentiality agreement claim was only a small part of Mo-Vac's overall case. (Supp. C.R. 1: 59, 73-74).

Upon remand, a second trial was held on the sole issue of the amount of reasonable and necessary attorneys' fees incurred by Mo-Vac in connection with

its breach of confidentiality agreement claim only. At this second trial, Mo-Vac sought approximately $900,000 in attorneys' fees, and the jury awarded Mo-Vac $370,375.00 for representation of the breach of confidentiality claim through trial, plus an additional $50,000.00 for future representation at the various stages of appeal to both the Court of Appeals and the Texas Supreme Court. (*See* R.R. 5: 199, line 10—200, line 14; C.R. 1: 105-110; App. Ex. 1).

This amount was grossly disproportionate to the amount recovered and the amount of work performed in connection with this sole surviving claim. As stated above, Mo-Vac's sole surviving claim of breach of confidentiality agreement was only a small part of the much larger overall case. Not only is Mo-Vac's asserted amount of $900,000 in attorneys' fees nine times the amount of the verdict awarded to Mo-Vac on its sole surviving claim against Total, it is also approximately two times the amount of attorneys' fees originally awarded to Mo-Vac in connection with six causes of action against two Defendants. Moreover, Mo-Vac failed to keep contemporaneous records or billing statements, and there was no segregation of the time spent in connection with the breach of confidentiality agreement. Despite the lack of segregation and contemporaneous billing records, Mo-Vac's attorney claimed that 90% of counsel's time in trying

this case was dedicated to the breach of confidentiality agreement claim. (R.R. 5: 159, line 21—160, line 4).

With respect to Mo-Vac's counsel's claim that the breach of confidentiality agreement claim took up 90% of his time, Total's expert on attorneys' fees, Mr. Thomas, testified as follows:

Q. And also, going back to the segregation, do you think, after you've reviewed the record in this matter, all those thousands of pages of it, do you have an opinion as to whether or not 90 percent of Mr. Martinez – 90 percent is anywhere close to what should be allotted in the claim in question?

A. Well, I mean, I don't have good time records, contemporaneous time records from work that they did. I just have the summary that they gave us. I have the transcript of the trial record. I have some briefing that the parties have done, and the opinion. And so I looked at all of that to try and see if I could figure out a way to segregate, and to see whether or not, you know, 90 percent of all of the work that was done in this case is related to breach of the Confidentiality Agreement. And I don't see it. For example, if you look at the trial transcript, that is, the 21 volumes, very little of it is discussing the breach of the Confidentiality Agreement. Of the 20 witnesses, three of them discuss the breach of the confidentiality. And they were towards the very end of the case. If you look at the brief that was filed by your client Total, you had a 49 page brief covering all of the issues that you wanted to complain about. And page 27 through 35 discuss the breach of the confidentiality. So that's about 18 percent of your brief. The Court of Appeals, looks like about 22 percent of theirs. And Mo-Vac has a brief that they filed in response to yours. And they discuss the breach of the confidentiality in one page out of 23, which is less than one percent.

(R.R. 6: 27, line 24—29, line 6).

As set forth in the testimony above, Mo-Vac's claim is undermined by the reality of the case. First, the breach of confidentiality agreement claim did not even come into issue in the first trial until three weeks into the trial:

Q. So you're saying that 90 percent of this trial that lasted six weeks was over the breach of confidentiality contract?

A. Sounds a little bit difficult to understand. But if you like, I can explain it.

Q. Just asking.

A. Yes. The answer to your question, yes.

Q. Okay. Do you recall how many weeks we were in trial before you asked a single question about the Confidentiality Agreement?

A. I haven't the slightest idea. But maybe you do know, which is fine.

Q. Would it surprise you it was three weeks into the trial before you asked a question about confidentiality?

A. Perhaps. I don't doubt you. If the record says that.

(R.R. 5: 215, lines 14-22).

Mo-Vac's counsel attempted to explain this away by arguing that he needed to be prepared for the breach of confidentiality agreement claim at any time:

Q. Well, my question is how is it that you're attributing that time to recovery of the breach of the Confidentiality Agreement by three lawyers? That's my question.

A. I had to be here, Mr. Ramirez. And at any moment that the Confidentiality Agreement could have been addressed, or could have been

discussed. As you know, depositions and discovery before trial is one thing. In trial, you never know what's going to happen. You never know what information will be put on the table. We had to be here. We had to be ready for it. And we had to address it.

(R.R. 5: 217, lines 13-24).

However, the fact remains that the time spent by Mo-Vac in this case and documented in the compilation was devoted to Mo-Vac's other causes of action against both Defendants in this matter, and testimony regarding the breach of confidentiality agreement claim did not even start until three weeks into the trial.

Second, the fact that the sole claim of breach of confidentiality agreement did not take up 90% of counsel's time in preparation for and during trial in this case is further undermined by the results actually obtained for this claim at trial. In *Smith v. Patrick W.Y. Tam Trust*, the Texas Supreme Court noted the importance of considering the amount involved and the results obtained in determinations of the amount of an award of attorneys' fees. 296 S.W.3d 545, 548 (Tex. 2009). The Texas Supreme Court found that even though the amount of attorneys' fees was uncontested, the lower court erred in awarding the plaintiff attorneys' fees that greatly exceeded the amount actually recovered by the plaintiff. *See id.* In reversing the lower court's decision as to attorneys' fees, the Texas Supreme Court stated "[b]ut the fee, though supported by uncontradicted testimony, was

unreasonable in light of the amount involved and the results obtained, and in the absence of evidence that such fees were warranted due circumstances unique to this case." *Id.* As in *Smith v. Patrick W.Y. Tam Trust*, the amount of attorneys' fees awarded here is grossly disproportionate to the amount recovered for Mo-Vac's claim of breach of confidentiality agreement, the sole surviving claim after appeal. As such, the award of attorneys' fees was unreasonable.

Similarly, the Beaumont Court of Appeals, in the case of *Wythe II Corp. v. Stone*, found that the award of attorneys' fees was excessive and remanded the case back to the trial court for a determination of a reasonable fee. 342 S.W.3d 96, 108 (Tex.App.—Beaumont 2011). As with the case at bar, *Wythe* involved excessive attorneys' fees awarded by a jury. *Id.* Specifically, the court in *Wythe* found that the evidence offered by the appellee to support the *Arthur Andersen* factors did not provide sufficient justification for shifting the entire fee amount to the appellant where much of the time expended concerned a mandamus proceeding in which the appellee was unsuccessful. *See id.* Similarly to the facts in *Wythe*, here the evidence is insufficient to support the jury's award of attorneys' fees because the award is grossly disproportionate to the results obtained for the sole surviving claim of breach of confidentiality agreement. This single claim was only a small part of a much larger trial involving multiple claims against multiple defendants.

## PRAYER

Total respectfully prays that this Court:

1) Reverse the trial court's *Final Judgment* signed on April 30, 2015 (C.R. 1: 113-115; App. Ex. 2) ordering that Mo-Vac recover from Total:

   a. $370,375.00 for the successful representation of the breach of confidentiality claim through trial;

   b. $25,000.00 for future representation through appeal to the court of appeals, if one is taken;

   c. $5,000.00 for future presentation at the petition for review stage in the Supreme Court of Texas, if the case comes before the Supreme Court of Texas;

   d. $12,000.00 for future presentation at the merits briefing stage in the Supreme Court of Texas, if the case comes before the Supreme Court of Texas; and

   e. $8,000.00 for future presentation through oral argument and the completion of proceedings in the Supreme Court of Texas, if the case comes before the Supreme Court of Texas.

2) Reverse the trial court's denial of *Total E&P USA, Inc.'s Motion for New Trial* (C.R. 1: 191);

4.) Render a decision that Appellee, *Mo-Vac Services Company, Inc.* be awarded $40,000 as reasonable and necessary attorneys' fees in this matter, in accordance with the expert testimony of Total's expert witness on attorneys' fees, Ray Thomas;

6.) Alternatively, remand this case to the trial court for a new trial to determine the specific amount of work performed and hours spent on

the sole surviving claim of breach of confidentiality agreement against Total; and

7.) All such other and further relief to which Appellant, Total E&P USA, Inc. is justly entitled.

Respectfully submitted,

ELLIS, KOENEKE & RAMIREZ, L.L.P.
1101 Chicago
McAllen, Texas 78501-4822
Tel: (956) 682-2440
Fax: (956) 682-0820

By: */s/ Edmundo O. Ramirez*
    EDMUNDO O. RAMIREZ
    State Bar No. 16501420
    MINERVA I. ZAMORA
    State Bar No. 24037765

**ATTORNEY FOR APPELLANT**
**TOTAL E&P USA, INC.**

## CERTIFICATE OF COMPLIANCE

There are 10,639 words included in the Appellant's Brief.


## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing has on October 15, 2015, been delivered, in the manner indicated below, to the following:

Adrian R. Martinez
Alberto T. Garcia, III
GARCIA & MARTINEZ, L.L.P.
6900 N. 10th St., Suite 2
McAllen, Texas 78504
*Via CMRRR 7001 0320 0000 9475 0651*


*/s/ Edmundo O. Ramirez*
Edmundo O. Ramirez

# APPENDIX

| Exhibit | Date | Document |
|---------|------|----------|
| 1 | 04/16/2015 | Jury Charge |
| 2 | 04/30/2015 | Final Judgment |



FILED
AT 11:51 O'CLOCK a.m.

APR 16 2015

LAURA HINOJOSA, CLERK
District Court, Hidalgo County
By _____ Deputy #22

CAUSE NO. C-023-05-E

| | | |
|---|---|---|
| MO-VAC SERVICES COMPANY, INC. | § | IN THE DISTRICT COURT, Hidalgo County |
| | § | |
| VS. | § | |
| | § | 275TH JUDICIAL DISTRICT |
| | § | |
| | § | |
| TOTAL E&P USA, INC. | § | HIDALGO COUNTY, TEXAS |

275TH JUDICIAL DISTRICT

## JURY CHARGE

MEMBERS OF THE JURY:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions. Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in the dictionaries or on the Internet. Do not post any information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason.

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the bailiff when you are not deliberating. The bailiff will give your notes to me promptly after collecting them from you. I will make sure your notes are kept in a safe, secure location and not disclosed to anyone. After you complete your deliberations, the bailiff will collect your notes. When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

Here are the instructions for answering the questions:

1.      Do not let bias, prejudice or sympathy play any part in your decision.

2.      Base your answers only on the evidence submitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

3.      You are to make up your own minds about the facts. You are the sole judges of the

Appendix Exhibit
1

105

credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4. If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5. All the questions and answers are important. No one should say that any question or answer is not important.

6. A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

7. Answer "yes" or "no" to all questions unless otherwise instructed. A "yes" answer must be based on a preponderance of the evidence unless you are told otherwise. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence unless you are told otherwise.

The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

8. Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do no discuss or consider the effect your answers will have.

9. Do not answer questions by drawing straws or by any other method of chance.

10. Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

11. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

12. Unless otherwise instructed, the answers to the questions must be based on the decision of at least ten of the twelve jurors. The same ten jurors must agree on every answer. Do not agree to be bound by a vote of anything less than ten jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would

waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

## Presiding Juror:

1. When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

2. The presiding juror has these duties:

   a. have the complete charge read aloud if it will be helpful to your deliberations;

   b. preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;

   c. give written questions or comments to the bailiff who will give them to the judge;

   d. write down the answers you agree on;

   e. ~~get the signatures for the verdict certificate; and~~

   f. notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

## Instructions for Signing the Verdict Certificate:

1. Unless otherwise instructed, you may answer the questions on a vote of ten jurors. The same ten jurors must agree on every answer in the charge. This means you may not have one group of ten jurors agree on one answer and a different group of ten jurors agree on another answer.

2. If ten jurors agree on every answer, those  10  jurors sign the verdict. If eleven jurors *two* agree on every answer, those eleven jurors sign the verdict. If all twelve of you agree on ~~every answer, you are unanimous and only the presiding juror signs the verdict.~~

3. All jurors should deliberate on every question. You may end up with all twelve of you *two* agreeing on some answers, while only ten or eleven of you agree on other answers. But when you sign the verdict, only those  10  who agree on every answer will sign the verdict.

Do you understand these instructions? If you do not, please tell me now.

JUDGE PRESIDING

107

## QUESTION NO. 1:

What is a reasonable fee for the necessary services of the attorneys for Movac Services Company, Inc. in connection with Movac Services Company, Inc.'s claim for Breach of Confidentiality Agreement against Total E&P, stated in dollars and cents?

In determining the reasonableness of an attorney's fee award, you must consider the following factors:

1. the time and labor involved, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly;

2. the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

3. the fee customarily charged in the locality for similar legal services;

4. the amount involved and the results obtained;

5. the time limitations imposed by the client or by the circumstances;

6. the nature and length of the professional relationship with the client;

7. the experience, reputation, and ability of the lawyer or lawyers performing the services; and

8. whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

Answer with an amount for each of the following:

a. For the successful representation of the breach of confidentiality claim through trial.

Answer: $370,375

b. For future representation through appeal to the court of appeals, if one is taken.

Answer: $25,000

c. For future presentation at the petition for review stage in the Supreme Court of Texas, if the case comes before the Supreme Court of Texas.

Answer: $5,000

d. For future presentation at the merits briefing stage in the Supreme Court of Texas, if the case comes before the Supreme Court of Texas.

108

Answer: $ 12,000

e. For future presentation through oral argument and the completion of proceedings in the Supreme Court of Texas, if the case comes before the Supreme Court of Texas.

Answer: $ 8,000

## Verdict Certificate

Check one:

_____ Our verdict is unanimous. All twelve of us have agreed to each and every answer. The presiding juror has signed the certificate for all twelve of us.

_____          _____
Signature of Presiding Juror                          Printed Name of Presiding Juror

_____ Our verdict is not unanimous. Eleven of us have agreed to each and every answer and have signed the certificate below.

✓   Our verdict is not unanimous. Ten of us have agreed to each and every answer and have signed the certificate below.

| Signature | Name Printed |
|---|---|
| 1. *Aleida C. Rodriguez* | Aleida C. Rodríguez |
| 2. *Adalberto Munguia* | Adalberto Munguia |
| 3. *Benino Capetillo* | Benino Capetillo Jr. |
| 4. *Araceli Garcia* | Araceli Garcia |
| 5. *Linda T. Bonjour* | Linda T. Bonjour |
| 6. *Yesenia Garcia* | Yesenia Garcia |
| 7. *Martin Garcia* | Martin Garcia |
| 8. *Jose Luis Salinas* | Jose Luis Salinas |
| 9. *Noemi Castillo Garza* | Noemi Castillo Garza |
| 10. *Monica Peña* | Monica Peña |
| 11. | |

110

CAUSE NO. C-023-05-E

| | | |
|---|---|---|
| MO-VAC SERVICES COMPANY, INC. | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 275TH JUDICIAL DISTRICT |
| | § | |
| TOTAL E&P USA, INC. | § | HIDALGO COUNTY, TEXAS |

## FINAL JUDGMENT

On April 14, 2015 this case was called for trial. Plaintiff Mo-Vac Services Company, Inc. appeared through its representative and through its attorneys and announced ready for trial. Defendant Total E&P USA, Inc. also appeared through its representative and its attorneys and announced ready for trial.

After a jury was impaneled and sworn, it heard the evidence and arguments of counsel. In response to the jury charge, the jury made findings that the court received, filed, and entered of record. The Court takes judicial notice of those jury findings and they are incorporated herein by reference.

The Court hereby RENDERS judgment for Plaintiff Mo-Vac Services Company, Inc. and that it is entitled to recover reasonable and necessary attorneys' fees from Defendant Total E&P USA, Inc. as follows:

1.  $370,375.00 for the successful representation of the breach of confidentiality claim through trial;

2.  $25,000.00 for future representation through appeal to the Court of Appeals, if one is taken and Plaintiff Mo-Vac Services Company, Inc. is successful in such appeal;

3.  $5,000.00 for future representation at the petition for review stage in the Supreme Court of Texas, if the case comes before the Supreme Court of

Appendix Exhibit
2

1

113

Texas and Plaintiff Mo-Vac Services Company, Inc. is successful before the Texas Supreme Court;

4. $12,000.00 for future representation at the merits briefing stage in the Supreme Court of Texas, if the case comes before the Supreme Court of Texas and Plaintiff Mo-Vac Services Company, Inc. is successful before the Texas Supreme Court;

5. $8,000.00 for future representation through oral argument and the completion of proceedings in the Supreme Court of Texas, if the case comes before the Supreme Court of Texas and Plaintiff Mo-Vac Services Company, Inc. is successful before the Texas Supreme Court; and

6. post-judgment interest that begins to accrue on the dates described below at an annual rate of 5%, and continues accruing until the date this judgment is satisfied:

   a. on the amount in Paragraph 1, interest begins to accrue on the day this judgment is signed;

   b. on the amount in Paragraph 2, interest begins to accrue on the date the Court of Appeals issues its final judgment;

   c. on the amounts in Paragraph 3-5, interest begins to accrue on the date the Supreme Court of Texas issues its final judgment.

This judgment is final, disposes of all claims and all parties, and is appealable.

The Court orders execution to issue for this judgment.

2

114

SIGNED, DATED AND ENTERED ON THIS __30th__ DAY OF APRIL, 2015.

HONORABLE JUAN PARTIDA
JUDGE PRESIDING

AGREED AS TO FORM ONLY:

Alberto T. Garcia III
Counsel for Plaintiff

Edmundo O. Ramirez
Counsel for Defendant

cc:     Albert Garcia; albert@garmtzlaw.com ; yoli@garmtzlaw.com
        Adrian R. Martinez; adrian@garmtzlaw.com
        Edmundo O. Ramirez; eor@ekrattoneys.com
        Minerva Zamora; miz@ekrattorneys.com

3

115